PASQUALE DON FRANCISCO'S CASE.

Worcester. April 22, 1982. — September 28, 1982.

Present: BROWN, PERRETTA, [ KASS, JJ.

*Workmen's Compensation Act*, Amount of compensation, Subsequent injury. *Statute*, Retroactivity.

An employee found in 1978 to be totally disabled as the result of degenerative physical changes set in motion by an injury which had occurred in 1969, shortly after which he had returned to work, was deemed to have suffered a "subsequent injury" as contemplated by G. L. c. 152, § 35B, and was thus entitled to worker's compensation payments at the rate in effect in 1978. [458-462]

General Laws c. 135, § 35B, inserted by St. 1970, c. 667, § 1, was applicable in determining the amount of worker's compensation to be paid to an employee who, in 1978, became unable to work as the result of degenerative physical changes set in motion by an injury which had occurred in 1969. [462-463]

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *Garrity*, J.

*Paul P. O'Connor* for the insurer.

*Walter J. Avis, Jr.*, for the employee.

PERRETTA, J. While acting within the scope of his employment on June 3, 1969, the employee fell twenty feet from staging to the ground. He sustained a neck injury for which the insurer paid almost three weeks' compensation. The employee returned to work without restrictions on his activities, stopping on May 8, 1978. He has not worked since that date. A single member of the Industrial Accident Board, whose findings were affirmed and adopted by the reviewing board (board), found that on May 8, 1978, the employee was totally disabled "as a direct result of degenerative changes set in motion by [the 1969] injury." The board

ordered that the employee receive benefits at the rate in effect on May 8, 1978, in accordance with G. L. c. 152, § 35B, inserted by St. 1970, c. 667, § 1. That statute provides, in relevant part: "An employee who has been receiving compensation under this chapter and who has returned to work for a period of not less than two months shall, if he is subsequently injured and receives compensation, be paid such compensation at the rate in effect at the time of the subsequent injury whether or not such subsequent injury is determined to be a recurrence of the former injury."[1] A judge of the Superior Court affirmed the board's decision, and the insurer appeals, arguing that the employee's condition is neither a "subsequent injury" nor a "recurrence of the former injury" and that § 35B applies only to injuries occurring after February 1, 1971, the effective date of that provision. See St. 1970, c. 667, § 2. We affirm the judgment.

The insurer does not dispute the facts found by the single member and adopted by the board. From 1947 to November, 1971, the employee worked in "heavy construction," first as a laborer and then as an iron worker. When the employee returned to work after his 1969 injury, he experienced neck and back pain at various times, particularly when he was engaged in strenuous activity. In November, 1971, he was elected business agent for his union, and in this capacity the employee's duties were to assign iron workers to various jobs, to visit work sites, and to investigate grievances. This last responsibility entailed climbing ladders and steel structures. Throughout this period, 1971 to May, 1978, the employee was aware of a "progressive deterioration" in his physical condition, particularly in respect to "problems" with his neck and left arm. His complaints of pain "progressively" increased, but the employee never made or filed an incident report. On occasion he would have to be driven home from work because he was unable to drive his own car due to neck pain.

---

[1] Section 35B also provides that "if compensation for the old injury was paid in a lump sum, [the employee] shall not receive compensation unless the subsequent claim is determined to be a new injury."

The employee's medical expert testified that when he examined the employee in May, 1978, he noted that the employee suffered from "tenderness and restricted motion" in his neck and a "loss of sensation to pinprick and weakness in the left upper extremity and degenerative changes in the cervical spine at C5-6." A disc protrusion at "C5-6" was confirmed by a myelogram. The doctor related that the employee was suffering from "post-traumatic cervical arthritis in C5-6 with associated disc herniation." It was his opinion that the employee was totally disabled and that his disability was causally related to the 1969 injury.

The employee's expert further testified that the employee has had "continuous symptoms" which, since 1969, became "progressively worse" and that the 1969 injury "set in motion the inevitable progression of changes in the employee's cervical spine that culminated" in his total disability. He stated that the employee's "degenerative changes would have taken place whether or not the employee was working but that by working the disability occurred a little bit sooner."[2]

1. *Scope of § 35B.*

There is no dispute that the employee is entitled to compensation, and the sole issue is whether the compensation is to be at the rate in effect on May 8, 1978, rather than on June 3, 1969.

The question arises in the following context. The right to compensation under our worker's compensation act, G. L. c. 152, as amended (the Act), originates in the injury, and the rate of compensation is fixed by statute,[3] which by gen-

---

[2] This case involves no suggestion that the employee's 1978 disability might be attributable to aggravation of the 1969 injury by the normal incidents of employment. The board found that the "1969 injury was not aggravated by his continuing to work any more than it may have been by his normal daily activities, the only true aggravating factor being the passage of time." See *Zerofski's Case*, 385 Mass. 590, 593-594 (1982), and cases therein cited.

[3] See G. L. c. 152, § 34 (compensation for total incapacity), and § 34A (compensation for total and permanent incapacity).

eral rule (later embodied in § 2A) must be prospectively ap-
plied. Accordingly, compensation benefits are to be paid at
the rate in effect on the date of the injury. *Beausoleil's
Case,* 321 Mass. 344 (1947), and cases therein cited. *Steuter-
man's Case,* 323 Mass. 454 (1948). See generally Locke,
Workmen's Compensation § 177, at 191-194 (2d ed. 1981).
As a corollary, where an employee is again unable to work
because of a prior injury, compensation has been paid by
the insurer of that original risk and, hence, at the rate in ef-
fect at the time it undertook that risk, the date of the prior
injury. See *Gaglione's Case,* 241 Mass. 42, 43 (1922);
*Evans's Case,* 299 Mass. 435, 437 (1938); *Zerofski's Case,*
385 Mass. 590, 592 (1982). Thus arises the dispute, whether
the worker's recent absence is due to the prior or a new in-
jury.

The employee argues that he is entitled to the more recent
rate because § 35B applies to any "subsequent period of in-
capacity" (see Locke, Workmen's Compensation § 302, at
352-353 [2d ed. 1981]) which is found to be either a recur-
rence of the former injury or a new injury. The insurer con-
tends that as the employee's inability to work was found to
be the result of a degenerative process set in motion by the
1969 injury rather than a new injury or the reappearance of
the symptoms associated with the former injury, § 35B is in-
applicable. But see *Zerofski's Case,* 385 Mass. at 596 & n.7.

In interpreting § 35B, the parties have failed to apply
general principles of statutory construction. "[I]t is estab-
lished that the workmen's compensation act is to be con-
strued broadly, rather than narrowly, in the light of its pur-
pose and, so far as reasonably may be, to promote the ac-
complishment of its beneficent design. . . . But it is also
settled that, in construing a statute, its words must be given
their plain and ordinary meaning according to the approved
usage of language . . . and that the language of the statute is
not to be enlarged or limited by construction unless its ob-
ject and plain meaning require it." *Johnson's Case,* 318
Mass. 741, 746-747 (1945).

The purpose of the Act is to replace wages lost by reason of an employee's inability to work because of an injury. "The compensation to be paid bears direct relation to the loss of earnings resulting from the injury. All compensation thus provided is by way of relief from inability to earn, or for deprivation of support flowing from, wages theretofore received by the employee." *Ahmed's Case,* 278 Mass. 180, 183 (1932). See also *Evans's Case,* 299 Mass. 435, 436 (1938). We note that under the general rule the employee sustaining a new injury, one independent of and totally unrelated to any prior injury, receives compensation commensurate with the wages lost. See G. L. c. 152, § 34 & 34A. However, under the corollary to that rule, prior to the enactment of § 35B, where the employee's absence from work was causally related to and the consequence of a prior compensable injury, the compensation bore no relationship to the wages being earned on the date the employee again became unable to work. Compensation based upon wages in effect at the time of the prior injury would be inconsistent with the purpose of the Act.

We turn to the language of § 35B, which, by the plain and ordinary meaning of the words used, has application only to employees who are injured not less than two months following the date of their return to work after being unemployed because of a compensable injury. ("An employee who has been receiving compensation under this chapter and who has returned to work for a period of not less than two months shall, if he is subsequently injured . . .").

We give the word "injury" its specialized rather than common meaning. That type of injury for which compensation is awarded under c. 152 "has been broadly defined to include 'whatever lesion or *change* in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability'" (emphasis supplied). *Fitzgibbons's Case,* 374 Mass. 633, 637 (1978), quoting from *Burns's Case,* 218 Mass. 8, 12 (1914). Additionally, because the employer takes the employee as he finds him, an injury includes the aggravation of a preexist-

ing condition. See, e.g., *Steuterman's Case*, 323 Mass. 454, 455 (1948). See generally Locke, Workmen's Compensation § 173, at 177-179 (2d ed. 1981). Further, the injury must be work related. As recently stated: "To be compensable, the harm must arise either from a specific incident or series of incidents at work, or from an identifiable condition that is not common and necessary to all or a great many occupations. The injury need not be unique to the trade, and need not, of course, result from the fault of the employer. But it must, in the sense we have described, be identified with the employment." *Zerofski's Case*, 385 Mass. at 594-595.

We construe the terms "subsequently injured" and "subsequent injury" to mean a change in the employee's physical or mental condition, see *Burns's Case*, 218 Mass. at 12; *Fitzgibbons's Case*, 374 Mass. at 637-638, which occurs at least two months after his return to work. When such a change in the employee's condition occurs, it is of no consequence that the change may be found to be causally related to the injury for which he had been receiving compensation prior to his return to work. (Section 35B: "[W]hether or not such subsequent injury is determined to be a recurrence of the former injury".) The employee is entitled to compensation at the rate in effect on the day he is again required to leave work. Cf. *Atamian's Case*, 265 Mass. 12, 16 (1928); *Trombetta's Case*, 1 Mass. App. Ct. 102, 105 (1973).

To read § 35B to be, as suggested by the employee, a "remedial upgrading of compensation for subsequent periods of incapacity determined as a question of fact to be recurrence," is merely to shift focus away from the word "injury" to "recurrence" without regard for the meaning of either. While the end result may be close to the mark that we have reached, the employee's reasoning is unnecessarily artificial and can produce results we think were not intended by the Legislature. See, e.g., *Calheta's Case, post* 464 (1982).[4]

---

[4] Argued and decided, along with *Czarniak's Case, post* 467 (1982), on the same dates as the present one.

The insurer, on the other hand, would narrowly and literally construe § 35B. It would recognize a "recurrence" of the former injury, but it would do so only where the employee's condition was "reappearing" and spasmodic rather than, as here, constant and degenerative. We see no significant distinction between periodic changes in one's condition resulting in lost wages and a steady process of deterioration of one's physical or mental abilities culminating in the inability to work. Cf. *Fitzgibbons's Case*, 374 Mass. at 638. The cause, a change in the employee's condition which is causally related to a prior injury, and the result, loss of wages, are identical in either event.

We hold that § 35B is a legislative remedy for the disparity which would otherwise exist between wages lost and compensation received in those situations where an employee returns to work but, because of a prior compensable injury, his ability to perform his duties changes while his compensation benefits remain the same. Our construction of § 35B is consistent with the "beneficent design" of the Act, *Johnson's Case*, 318 Mass. at 746, and in furtherance of its purpose, *Ahmed's Case*, 278 Mass. at 183.[5]

The board's findings show that the employee, subsequent to his reemployment, became unable to work because of his 1969 injury, and he therefore falls within the scope of § 35B.

2. *Prospective Application of § 35B.*

General Laws c. 152, § 2A, inserted by St. 1946, c. 386, § 3, provides that any amendment which would increase the rate of compensation to be received by an employee shall "be deemed to be substantive in character and shall apply only to personal injuries occurring on and after the effective date of such act." In *Zerofski's Case*, 12 Mass. App. Ct. 154, 159 (1981), *S.C.*, 385 Mass. 590 (1982), § 35B

---

[5] Our reading of the statute is further supported by the proviso to § 35B, that where an employee has received a lump sum payment, he is not entitled to receive any compensation due to a subsequent claim unless it is found to be based upon a new injury. See note 1, *supra*. In a lump sum payment situation, "[o]rdinarily, the whole liability of the insurer is settled." Locke, Workmen's Compensation § 561, at 677 (2d ed. 1981).

was construed as "'substantive in character.'" The insurer looks to the 1969 injury and argues that application of § 35B in this instance would be retrospective. Under § 35B, however, the employee's right to compensation at the increased rate and the insurer's burden to pay it originate in the change in the employee's condition subsequent to his return to work. Where, as here, the injury occurs after the effective date of § 35B, February 1, 1971, application of that amendment is not retrospective.

The judgment is affirmed. Costs to the employee are to be determined by a single justice of this court.

*So ordered.*