## Scott Wadsworth's Case.

No. 09-P-1085.

Suffolk. April 14, 2010. - October 15, 2010.

Present: KATZMANN, MEADE, & SIKORA, JJ.

Further appellate review granted, 459 Mass. 1101 (2011).

*Workers' Compensation Act,* Amount of compensation, Cost of living allowance, Insurer. *Laches.*

The reviewing board of the Department of Industrial Accidents (board) properly disallowed, in an award to the employee of workers' compensation benefits due to permanent and total incapacity, the administrative judge's increase of the weekly compensation based on imputed loss of expected income enhancement, as authorized by G. L. c. 152, § 51, where there was no evidence in that record demonstrating that the employee either had acquired sufficient training or skills or had begun a path to skill acquisition at the time of his injury that would have supported a reliable projection of increased wages over time [104-106]; likewise, the board properly disallowed the administrative judge's increase based on G. L. c. 152, § 35B, which entitles a worker who suffers a disabling recurrence of an injury after returning to employment following the original injury compensation on the basis of his wage rate at the time of the recurrence, where the employee's subsequent employment occurred entirely in another State and outside the operation of the Massachusetts workers' compensation system [106-108].

The reviewing board of the Department of Industrial Accidents properly remanded for further proceedings an administrative judge's denial of the insurer's claim for recoupment of excessive workers' compensation payments made to the employee, where the administrative judge's treatment of the issue was conclusory; however, this court concluded that, on remand, the employee should be entitled to prove that the insurer's delay in seeking recoupment had been unreasonable by reason of the duration of the delay and the insurer's original fault for, and superior access to knowledge about, any overpayment. [108-110]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*William C. Harpin* for the employee.

*Martin T. Sullivan* for the insurer.

SIKORA, J. Claimant Scott Wadsworth suffered a severe workplace injury to his hand in 1980. Despite extensive medical

treatment and substantial periods of employment during the ensuing twenty-two years, the injury persisted, worsened, and forced an end to his work life as of July 1, 2003. An administrative judge of the Department of Industrial Accidents (DIA) awarded him weekly compensation by reason of his permanent and total incapacity as authorized by G. L. c. 152, § 34A. The administrative judge appeared to have increased the weekly compensation by two statutory measures, neither of which he specifically quantified. The first measure resulted from the imputed loss of expected income enhancement authorized by G. L. c. 152, § 51 (§ 51). The second was a heightened level of compensation granted to a worker who had returned to employment after a disabling injury but who then suffered a disabling recurrence of the injury; G. L. c. 152, § 35B (§ 35B), entitles such a worker to compensation upon the basis of his wage rate at the time of the recurrence. The reviewing board of the DIA (board) disallowed both enhancements. It also vacated the administrative judge's denial of the insurer's claim for a recoupment of excessive payments, and remanded that issue for further proceedings. For the following reasons, we (1) affirm the board's reversal of the statutory enhancements, and (2) affirm the remand of the insurer's claim for recoupment but order scrutiny of the insurer's conduct under the equitable principle of laches.

*Background.* The administrative record establishes the following facts. At the time of the evidentiary hearing before the administrative judge, Scott Wadsworth was forty-nine years old and had resided in Connecticut for most of his life. He attended high school for four years, but did not graduate. He took trade courses, including mechanics, sheet metal shop, drafting, and welding, and worked as a farm laborer and as a short order cook. After high school, he joined the Navy. He later separated from that service for medical reasons and resumed work again as a short order cook.

In 1978, Wadsworth began work as a welder at New England Concrete Pipe Company in Massachusetts. He also operated a rolling machine and cement mixing equipment. On December 12, 1980, Wadsworth seriously injured his right hand. As he was feeding metal into a rolling machine, the machine caught and crushed the hand. At the time of his injury, he earned a weekly wage of $309.65.

From the date of the accident to 1984, Wadsworth underwent multiple surgical procedures to repair and restore the hand. These procedures, however, left his hand further deformed, weak, pain-wracked, and diminished by a seventy-two percent functional impairment. As a result of the accident, he has suffered from excruciating pain, depression, and posttraumatic stress disorder.

In 1983, he entered but did not complete a training program for computer machinist qualification at the Hartford Technical Institute. In that same year, he completed his GED. In 1984, he attempted to return to work as a welder at New England Concrete Pipe Company but left after two weeks because he was unable to perform the work as a result of severe pain in his right hand.

From 1989 to 2003, Wadsworth worked at Wholesale Auto Supply Company in Connecticut, primarily as a counter salesperson. He continued there until his hand became so painful that he was forced to stop work altogether on July 1, 2003. His approximate weekly pay at Wholesale Auto Supply Company was $586.

Upon these facts the administrative judge concluded that Wadsworth was entitled to a total incapacity benefit under G. L. c. 152, § 34A, of $600 based on a weekly wage of $900, starting on July 1, 2003, the date fixed by the judge as the point of permanent and total disability. The insurer appealed from the decision of the administrative judge to the board. The board reasoned that the judge had provided an unspecified increment of expectation wages under § 51 and a final 2003 weekly base wage rate of approximately $600 under § 35B in order to reach the resulting figure of $900 per week. It concluded that he had misapplied both provisions. Instead, the board determined that Wadsworth was entitled to "§ 34A benefits at a rate of $206.43, based on his pre-injury average weekly wage of $309.65, from and after July 1, 2003, plus all applicable cost-of-living increases under [G. L. c. 152,] § 34B[,] to which [he] may be entitled," subject to possible recoupment by the insurer.[1] Wadsworth now appeals from those rulings.

[1] The statutory entitlement to a continuing cost-of-living adjustment will substantially enlarge the 1980-based award.

Additionally, the administrative judge allowed payments for loss of function

*Analysis.* Wadsworth contends that his weekly wage benefit should include enhancements under both § 51 and § 35B. He maintains also that the insurer is not entitled to any recoupment. Under G. L. c. 152, § 12(2), we review the decision of the board under the standards of the Administrative Procedure Act, G. L. c. 30A, § 14(7)(*a*)-(*d*) and (*f*)-(*g*).

1. *Section 51.* The pertinent language provides as follows:

> "Whenever an employee is injured under circumstances entitling him to compensation, if it be established that the injured employee was of such age and experience when injured that, under natural conditions, in the open labor market, his wage would be expected to increase, that fact may be considered in determining his weekly wage. A determination of an employee's benefits under this section shall not be limited to the circumstances of the employee's particular employer or industry at the time of injury."[2]

G. L. c. 152, § 51, as amended by St. 1991, c. 398, § 78.

Very little decisional law interprets § 51. The leading decision is *Sliski's Case,* 424 Mass. 126 (1997). There, the court explained that "§ 51 benefits attempt to compensate young workers for the economic opportunities [that] they would have had if their careers had not been interrupted so early." *Id.* at 135. In ruling that benefits under § 51 and § 34B (requiring cost-of-living adjustments to benefits) are not mutually exclusive, the court observed, "In some cases, an employee's abilities and prospects at the time of injury may be such that the employee could not reasonably look forward to wage increases related to skill acquisition, so that any wage increases would be purely inflationary. In other cases, however, economic projections under § 51 will reflect expectations regarding skill development and job progression." *Ibid.* The former situation captures Wadsworth's circumstances.

Although the administrative judge did not explain his com-

---

and for scarring and disfigurement authorized by G. L. c. 152, § 36(*i*) and(*k*), respectively. The insurer has pursued no appeal from those allowances.

[2]Although the current provision arose through amendments in 1991, well after the date of Wadsworth's original injury in 1980, the statute operates retroactively in these circumstances. See *Sliski's Case,* 424 Mass. 126, 129-130 (1997).

putation of the figure of $600, the board concluded that he had done so by applying § 51.[3] The board reversed the judge's ruling because it found that he had "proceeded to make findings relative to the training and classroom work [which Wadsworth] undertook *after* his work injury." The board observed that "[s]uch post-injury activities are not part of the § 51 analysis, as the statute plainly speaks to the employee's vocational profile 'when injured.' " In the absence of evidence of any training or skills acquisition by Wadsworth indicating a rising wages arc over time but for his injury, it deemed the § 51 wage enhancement award arbitrary and capricious, and vacated it.

In light of the observations in *Sliski's Case, supra,* we conclude that the board's analysis and ultimate determination were sound.[4] Section 51 limits wage increases to circumstances where it can be "established that the injured employee was of such age and experience *when injured* that, under natural conditions, in the open labor market, his wage would be expected to increase" (emphasis supplied). G. L. c. 152, § 51. No evidence in the record shows that Wadsworth either had acquired sufficient training or skills or had begun a path to skill acquisition at the time of his injury that would have supported a reliable projection of increased wages over time.

---

[3]The board inferred as follows: "Because the employee testified his last earnings before he became totally incapacitated in 2003 averaged $586 per week, 'sometimes more, sometimes less,' . . . we are compelled to conclude the $900 wage was assigned pursuant to the judge's application of § 51, rather than pursuant to § 35B [alone]."

The administrative judge stated explicitly, "I find that § 51 benefits apply to Mr. Wadsworth's situation." However, he never quantified the benefits.

[4]Our conclusion comports with a line of consistent unpublished decisions of this court. Unpublished opinions are not binding precedent. We consult them for their persuasive value. *Chace* v. *Curran,* 71 Mass. App. Ct. 258, 260 n.4 (2008). See *Klimek's Case,* 68 Mass. App. Ct. 1101 (2007) (affirming denial of § 51 benefits where evidence of employee's training and skills acquisition failed to demonstrate that he would have been entitled to additional compensation on that basis); *Starr's Case,* 76 Mass. App. Ct. 1119 (2010) (affirming denial of § 51 benefits because the employee took no active steps toward increasing his value in his profession and his stated intentions to do so, unsupported by extrinsic evidence, did not establish a claim under § 51); *Derosiers's Case,* 76 Mass. App. Ct. 1126 (2010), quoting from *Sliski's Case,* 424 Mass. at 135 (affirming denial of § 51 benefits because employee's "abilities and prospects at the time of injury" showed that she would not receive wage increases by reason of skill acquisition).

While the *Sliski* decision refers specifically to "skill acquisition," 424 Mass. at 135, we do not read the statute narrowly and invariably to require preinjury acquisition of skills or the beginning of training toward them. Those circumstances obviously strengthen a claim for enhancement. The statute refers more broadly to the claimant's "age and experience" and to "natural conditions . . . in the open labor market" as criteria for enhancement. Unfortunately here, the record does not show that Wadsworth's early trade courses progressed to increased marketable skills or upgraded jobs or that his naval experience resulted in an occupational specialty. His preinjury jobs as a farm laborer, short order cook, and welder did not form a trend of rising wages. Upon this evidence we cannot conclude that the board's rejection of the administrative judge's § 51 determination was arbitrary or capricious.[5]

2. *Section 35B.* Under § 35B, "[a]n employee who has been receiving compensation under this chapter and who has returned to work for a period of not less than two months shall, if he is subsequently injured and receives compensation, be paid such compensation at the rate in effect at the time of the subsequent injury whether or not such subsequent injury is determined to be a recurrence of the former injury . . . ." G. L. c. 152, § 35B, inserted by St. 1970, c. 667, § 1.

The administrative judge appeared to apply § 35B to credit Wadsworth with an average weekly wage of $600 at the time of his permanent and total incapacity on July 1, 2003.[6] From 1989 until July 1, 2003, Wadsworth had worked at Wholesale Auto Supply Company in Connecticut. The board determined

---

[5]If we assume, without deciding, that postinjury acquisition of skills should receive consideration in cases (such as this) in which the original injury causes an eventual but long delayed total incapacity, the record does not assist Wadsworth. Unfortunately, he did not complete the training program for computer machinist qualification at the Hartford Technical Institute. Meanwhile the severity of his injury thwarted his return to work as a welder. Those circumstances limited his work to the role of a counter salesperson.

[6]Wadsworth's approximate weekly pay in July, 2003, was $586. Because the administrative judge did not explain his computation of $600, the board presumed that the increase in Wadsworth's weekly wage derived in whole, or in part, from § 35B: "The only other mechanism [other than § 51] for finding a higher average weekly wage as of July 1, 2003 is provided by § 35B and, as we have noted, the employee testified that his wage was $586."

that his employment "in Connecticut . . . could not, as a matter of law, be used as a basis for calculating his incapacity benefits." It premised this conclusion on the reasoning of *Letteney's Case*, 429 Mass. 280, 285-286 (1999), in which the court held that out-of-State earnings could not contribute to the calculation of average weekly wages for determination of Massachusetts workers' compensation benefits. In *Letteney's Case*, the claimant's husband had worked for Massachusetts employers until 1986 and for the five years until his total incapacity in 1991 had conducted his own business in Florida. *Id.* at 281. The disease of mesothelioma resulting from exposure to asbestos during his earlier working career in Massachusetts caused his incapacity in 1991. *Ibid.* His widow sought to include in her benefits an increment based upon the five years of Florida earnings. *Ibid.*

The board and the court excluded the Florida earnings from the computation of Massachusetts benefits. The court reasoned that the very nature of the statutory insurance scheme consisted of an approximate long-term correlation of participating employers' premium contributions on the one hand, and employees' earnings and benefits on the other. *Id.* at 285. The out-of-State earnings and proposed incremental benefits constituted an externality unbalanced by any countervailing premium contribution from a participating employer. *Ibid.* In the court's words,

> "Compensation to the employee measured by earnings outside the Massachusetts workers' compensation system constitutes a liability for which neither the employer nor any other Massachusetts employer has provided. . . . Self-employment, out-of-State employment, and other excluded employment are not within the system and thus this long-run equilibration [of employer premiums and worker benefits] cannot take place."

*Ibid.* Accordingly, because "all Massachusetts employers participate in a common system, . . . it would be unfair to measure their obligations by events occurring outside of that system."[7] *Id.* at 286.

Here, because Wadsworth's subsequent employment at Whole-

---

[7] In *Letteney's Case, supra*, the claimant sought a computation of benefits

sale Auto Supply Company occurred entirely in Connecticut and outside the operation of the Massachusetts workers' compensation system, the board properly vacated the enhanced amount of the § 35B benefits.[8,9]

3. *Recoupment and laches.* Finally, Wadsworth argues that the administrative judge properly rejected the recoupment claim of the insurer, Continental Insurance Company/CNA. The judge summarily disposed of it.[10] For the following reasons, the board correctly reversed his ruling and remanded the claim for further proceedings.

The insurer pursues recoupment of more than $33,000 from

specifically under G. L. c. 152, § 35C. That provision, inserted by St. 1985, c. 572, § 45, prescribes a measurement of benefits, not an entitlement:

> "When there is a difference of five years or more between the date of injury and the initial date on which the injured worker or his survivor first became eligible for benefits under section thirty-one, thirty-four, thirty-four A, or section thirty-five, the applicable benefits shall be those in effect on the first date of eligibility for benefits."

No principled distinction blocks the extension of the rationale under the measurement provision of § 35C in *Letteney's Case* to the present request. The fundamental nature of the reasoning would appear to apply to claims of both entitlement and measurement.

[8]Wadsworth returned to work for New England Concrete Pipe Company in Massachusetts in 1984 for two weeks only. That duration falls short of the two-month minimum span required by § 35B for eligibility for benefits measured by the later and usually higher wage level.

[9]In his brief, Wadsworth points out that an employee of an uninsured employer is entitled to benefits serving the fundamental statutory purpose of wage replacement discussed in *Sellers's Case*, 452 Mass. 804, 808, 810-811 (2008), and proposes that all employees are entitled to a calculation of their wages, "whether from insured or uninsured employers."

However, the circumstance of the uninsured employer does not address the premise of the Massachusetts system discussed in *Letteney's Case, supra.* By G. L. c. 152, § 65, the Legislature provides compensation to the injured employee of the uninsured employer through a trust fund supported by all participating Massachusetts employers. The trust fund may then pursue the delinquent employer for reimbursement. By that mechanism, the program anticipates and addresses some measure of the consequences caused by evasive or noncontributing employers. No comparable allowance appears available or feasible for employment relationships outside the Commonwealth. In short, the Massachusetts system provides for the circumstance of the outlaw employer, but not the circumstance of the outlander employer.

[10]The disposition consisted of only one sentence: "I do not determine that the insurer is entitled to recoupment."

Wadsworth for payments of benefits to him during the period of 1985 to 1988 above the statutory cap of $45,000 in effect at that time. It alleges also that after July 1, 2003, it had mistakenly paid Wadsworth weekly incapacity benefits based upon his Connecticut earnings for about three years at the rate of nearly $150 per week. The unexplained conclusory form of the administrative judge's treatment of the issue justified the board's reversal and remand.

At the same time and for purposes of any proceedings upon remand, we observe that the circumstances of the insurer's claim compel consideration of the equitable defense of laches in behalf of Wadsworth. "Laches is an equitable defense consisting of unreasonable delay in instituting an action which results in some injury or prejudice to the defendant." *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 707 (1979). "Laches is not mere delay but delay that works disadvantage to another." *Colony of Wellfleet, Inc.* v. *Harris*, 71 Mass. App. Ct. 522, 531 (2008), quoting from *Moseley* v. *Briggs Realty Co.*, 320 Mass. 278, 283 (1946). "The operation of laches generally is a question of fact for the judge, and a judge's findings as to laches will not be overturned unless clearly erroneous." *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 517 (2005). The burden of proving laches rests with the party claiming laches. *McGrath* v. *C.T. Sherer Co.*, 291 Mass. 35, 59-60 (1935).

In the present circumstances Wadsworth is entitled to prove that the insurer's delay has been unreasonable by reason of its duration and the insurer's original fault for, and superior access to knowledge about, any overpayment; and that any present recoupment will inflict serious prejudice or disadvantage upon him. As to prejudicial harm, the nature of the payments is important. They were replacements for modest wages typically essential for ongoing basic needs and unlikely to have accumulated as savings or investments available now for restitution. See, e.g., *Garfield* v. *Garfield*, 327 Mass. 529, 533-534 (1951) (plaintiffs' delay of twenty-seven years and defendants' reliance upon the status quo including expenditures; laches barred the claim); *Randon* v. *Edstrom*, 1 Mass. App. Ct. 796, 798-799 (1974) (delay of twenty-two years; reliant expenditures by the

respondent; laches applicable); *Yetman* v. *Cambridge*, 7 Mass. App. Ct. at 707-709 (police waited seven years to bring a declaratory action against a city for determination of vacation time; reliant interim budgeting by the municipality; laches applicable). If the insurer chooses to pursue recoupment, the standard will be whether Wadsworth "has suffered substantial prejudice which could have been avoided had the [insurer] promptly asserted [its] rights." *Randon* v. *Edstrom*, *supra* at 798.

*Conclusion.* We affirm the board's reversal of the award of § 51 and § 35B benefits because the claimant had not acquired skills, undertaken training, or introduced other evidence predictive of a rising wage pattern or potentiality as of the time of his injury and because his final earnings arose from employment outside the Massachusetts workers' compensation system. We affirm also the board's remand of the insurer's recoupment claim for further proceedings but order any consideration of it to proceed under the equitable standard of laches.

*So ordered.*