## Scott Wadsworth's Case.

Suffolk. November 8, 2011. - March 16, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Workers' Compensation Act,* Amount of compensation, Average weekly wages, Subsequent injury, Insurer. *Statute,* Construction. *Laches.*

The reviewing board of the Department of Industrial Accidents (board) properly disallowed, in an award to an employee of workers' compensation benefits due to permanent and total incapacity, the administrative judge's increase of the weekly compensation based on imputed loss of expected income enhancement, as authorized by G. L. c. 152, § 51, where the evidence, even viewed generously, did not demonstrate that the employee was on a path toward a wage increase at the time of his injury in 1980 [680-684]; however, the board erred in concluding that the employee could not use the out-of-State wages he earned in 2003 (when the injury recurred) to establish his weekly compensation under G. L. c. 152, § 35B, where the plain and unambiguous language of the statute did not dictate such a result, and where allowing such recovery would not place a significant burden on insurers or act to increase unfairly workers' compensation premiums [684-690].

The reviewing board of the Department of Industrial Accidents (board) was neither arbitrary nor capricious in vacating an administrative judge's denial of recoupment for an insurer's overpayment of temporary total disability benefits, where there was an absence of any explanation or findings by the administrative judge in support of the denial; however, this court concluded that, on remand, such a claim might prevail if in accord with equitable principles, including the equitable defense of laches. [690-691]

APPEAL from a decision of the Industrial Accident Reviewing Board.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*William C. Harpin* for the employee.

*Martin T. Sullivan* for the insurer.

*Deborah Kohl & Kathleen G. Sumner,* for Workers' Injury Law & Advocacy Group, amicus curiae, submitted a brief.

GANTS, J. On December 12, 1980, when Scott Wadsworth (employee) was twenty-two years old, his right hand was crushed

in a metal rolling machine in the course of his employment with the New England Concrete Pipe Corporation (employer) in Massachusetts. The employee received workers' compensation benefits under G. L. c. 152, § 34, for his temporary and total incapacity for work from December 15, 1980, to May 2, 1988. In 1989, he found employment in Connecticut with Wholesale Auto Supply, where he worked initially as a driver and later as "counter person." After working in pain for many years and after a knuckle of his right index finger was replaced with an artificial joint, he underwent a medical procedure on July 1, 2003, to relieve his severe pain, which left him with unremitting "stabbing, stinging, burning pain in his right hand and arm." In December, 2003, the employee applied for total and permanent disability benefits under G. L. c. 152, § 34A, as of July 1, 2003. He also claimed under G. L. c. 152, § 51, that, when he was injured in 1980, he was of "such age and experience . . . that, under natural conditions, in the open labor market, his wage would be expected to increase," and that he was entitled to have this fact considered in determining the average weekly wage used in the calculation of benefits. In addition, he claimed under G. L. c. 152, § 35B, that he was entitled to receive compensation at the rate in effect on July 1, 2003, because he was permanently disabled from a subsequent injury that was a recurrence of his 1980 injury after having returned to work for a period of at least two months.[1] The workers' compensation insurer cross-claimed for recoupment of $34,169.73 in temporary disability benefits paid to the employee from 1985 to 1988 in excess of the statutory cap of $45,000 then in effect.

On June 12, 2007, an administrative judge of the Department of Industrial Accidents (department) concluded that the employee has been totally and permanently incapacitated as of July 1, 2003, and awarded him total and permanent incapacity benefits under § 34A. He also found under § 51 that, "if not for the horrific industrial injury," his wages on the open market "would be expected to have increased considerably." The administrative

---

[1]Scott Wadsworth (employee) also applied for medical benefits under G. L. c. 152, §§ 13 and 30, and benefits for the disfigurement, scarring, and loss of use of his right hand under G. L. c. 152, § 36, and reserved his claim for the doubling of benefits for the "serious and wilful misconduct" of his employer under G. L. c. 152, § 28.

judge concluded under § 35B that the amount of compensation should be determined at the rate in effect on July 1, 2003, because the injury to the employee's hand caused by the industrial injury in 1980 had worsened after he had been employed at the automotive supply store and left him totally disabled as of that date. The administrative judge ordered the insurer to pay the employee total and permanent disability benefits from July 1, 2003, based on an average weekly wage of $900, at a weekly compensation rate of $600, which would be subject to normal cost-of-living adjustments from that date through the operation of G. L. c. 152, § 34B. He also determined that the insurer was not entitled to any recoupment.[2]

The insurer appealed from this decision to the department's reviewing board (board), which affirmed the administrative judge's finding of permanent and total incapacity under § 34A but reversed his determination of average weekly wages and the resulting rate of weekly compensation. In particular, the board ruled that the employee did not meet the prerequisites to adjust upward his applicable weekly wage under § 51, because there was no evidence "that the employee's wages would have increased due to the acquisition of any particular skill anticipated at the time of his injury," or "of any time frame within which such increase reasonably might be expected."[3] Because the administrative judge's finding that the employee was entitled to an increase in applicable wages under § 51 was not "anchored in the evidence," the board declared the finding to be arbitrary and capricious. The board also concluded that, because the employee's recurrence of disability occurred while he was employed in Connecticut, his out-of-State wages could not be used under § 35B

---

[2]The administrative judge also ordered the insurer to pay medical benefits under G. L. c. 152, §§ 13 and 30, and benefits for the disfigurement, scarring, and loss of function of the employee's right hand under § 36. He reserved the claim under § 28. These benefit awards, and the reservation of the doubling of benefits claim, are not challenged on appeal. He also ordered the insurer to pay the employee's attorney's fees in the amount of $13,000, as well as deposition, stenographic, and "necessary" expenses.

[3]The reviewing board (board) of the Department of Industrial Accidents (department) also concluded that the judge erred in relying on training and classroom work the employee undertook after the 1980 injury in granting the rate enhancement under § 51, where the analysis should be limited to the employee's vocational profile at the time of the injury.

as the average weekly wage from which to calculate benefits.[4] The board concluded that his total and permanent disability benefits must be based on the average weekly wage he earned when he was initially injured on December 12, 1980 ($309.65), which, at the applicable two-thirds compensation rate, see G. L. c. 152, § 34A, would yield a weekly benefit amount of $206.43, plus cost-of-living adjustments under § 34B. The board also vacated as arbitrary the administrative judge's denial of recoupment because it did not rest on any subsidiary findings, and reserved the insurer's right to renew its claim for recoupment through a separate complaint filed with the department or in the Superior Court.[5]

The Appeals Court affirmed "the board's reversal of the award of § 51 and § 35B benefits because the claimant had not acquired skills, undertaken training, or introduced other evidence predictive of a rising wage pattern or potentiality as of the time of his injury and because his final earnings arose from employment outside the Massachusetts workers' compensation system." *Wadsworth's Case*, 78 Mass. App. Ct. 101, 110 (2010). The Appeals Court also affirmed the board's decision to vacate the denial of recoupment but ordered any consideration of recoupment "to proceed under the equitable standard of laches." *Id.* We granted the employee's application for further appellate review.

We affirm in part and reverse in part the board's decision. In short, we conclude that the board was not arbitrary or capricious in deciding that there was insufficient evidence to find that the employee was entitled under § 51 to compensation based on an amount greater than his average weekly wage. But we conclude that the board erred in finding that the employee's

[4]The board implicitly suggested that, if the employee had been employed in Massachusetts in 2003 when his disability recurred, his 2003 wages could have been used to calculate his compensation rate.

[5]The board also found that the insurer was entitled to recoup the difference between the weekly compensation it had paid the employee as ordered by the administrative judge and the weekly compensation ordered by the board, and could reduce the employee's adjusted § 34A benefit by not more than thirty per cent per week until the entire overpayment had been recouped. The board also ordered the insurer to pay the employee's counsel a fee of $1,495.34, based on the employee's having prevailed on the issue of his entitlement to permanent and total incapacity benefits under § 34A.

compensation should be based on the average weekly wage he earned when injured in 1980 rather than, under § 35B, the out-of-State average weekly wage he earned when that injury recurred in 2003. We recognize that, in reaching this finding, the board (and the Appeals Court) relied on what they understood to be controlling precedent in *Letteney's Case*, 429 Mass. 280, 285 (1999), that out-of-State wages may not be used to calculate workers' compensation benefits. We limit the holding in that case to out-of-State wages earned after suffering latent injuries (such as from exposure to asbestos) that do not result in eligibility for incapacity benefits for at least five years under G. L. c. 152, § 35C. We also affirm the board's decision to vacate the denial of recoupment for the insurer's overpayment of temporary total disability benefits between 1985 and 1988, but we note that, should the insurer decide to renew its claim for recoupment in a separate complaint filed with the department under G. L. c. 152, § 10, or in the Superior Court under G. L. c. 152, § 11D, its claim may prevail only if recoupment is equitable in the circumstances, including but not limited to the equitable defense of laches.[6]

*Standard of review.* We review a board's decision regarding workers' compensation benefits under the usual standard for appeal from a final decision of an administrative agency set forth in G. L. c. 30A, § 14 (7), except that we do not review whether the board's decision was supported by substantial evidence. G. L. c. 152, § 12 (2). *Sikorski's Case*, 455 Mass. 477, 479-480 (2009). In the context of this case, we may reverse or modify the board's decision where it is based on an error of law, or is arbitrary or capricious. See G. L. c. 30A, § 14 (7) (*c*), (*g*). Because the board may reverse the decision of an administrative judge only where it is "beyond the scope of his authority, arbitrary or capricious, or contrary to law," G. L. c. 152, § 11C, where the board reverses an administrative judge based on a finding of fact, we must determine whether the board was arbitrary or capricious in concluding that the administrative judge was arbitrary or capricious. "The board, as the agency charged with administering the workers' compensation law, is

---

[6]We acknowledge the amicus brief submitted by the Workers' Injury Law & Advocacy Group.

entitled to substantial deference in its reasonable interpretation of the statute." *Sikorski's Case, supra* at 480. See *Gateley's Case*, 415 Mass. 397, 399 (1993).

*Discussion.* We address three questions on appeal. First, was the board's decision that the evidence at the hearing did not support a finding that the employee was entitled to a wage enhancement under § 51 arbitrary or capricious? Second, was the employee entitled under § 35B to compensation at the rate in effect at the time of his subsequent injury in 2003 based on his out-of-State wages? Third, was the board's remand on the issue of recoupment arbitrary or capricious and, if not, what standard should govern in determining whether recoupment is equitable? We address each question in turn.

1. *Wage enhancement under § 51.* With certain exceptions, workers' compensation "is awarded for impairment of earning capacity and not for injury as such." *Evans's Case*, 299 Mass. 435, 436 (1938). Stated differently, workers' compensation benefits generally do not compensate an injury but, rather, compensate for the loss of earning capacity during the period of disablement or incapacity that results from the injury.[7]

Section 51 reads:

> "Whenever an employee is injured under circumstances entitling him to compensation, if it be established that the injured employee was of such age and experience when injured that, under natural conditions, in the open labor market, his wage would be expected to increase, that fact may be considered in determining his weekly wage. A determination of an employee's benefits under this section shall not be limited to the circumstances of the employee's particular employer or industry at the time of injury."

G. L. c. 152, § 51, as appearing in St. 1991, c. 398, § 78.[8] In enacting § 51, the Legislature recognized that, depending on an

---

[7]General Laws c. 152, § 36, which provides payment for certain specific injuries, and for which the employee here was awarded benefits, is an exception to this general rule.

[8]The revision of G. L. c. 152, § 51, as appearing in St. 1991, c. 398, § 78, applies retrospectively to injuries suffered before the amendment because § 51 was included in a group of amendments that were "deemed to be procedural in character," St. 1991, c. 398, § 107, and, under G. L. c. 152,

employee's age and experience, the average weekly wage he received when injured may not be a fair measure of the impairment of the earning capacity that he would likely have achieved had he not been injured. See *Sliski's Case*, 424 Mass. 126, 135 (1997) ("§ 51 benefits attempt to compensate young workers for the economic opportunities they would have had if their careers had not been interrupted so early"); L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 18.5, at 25 (3d ed. 2003 & Supp. 2011) (Nason, Koziol, & Wall) ("Limiting average weekly wage to the employment at the time of injury may be an unfair and unrealistic basis for measuring loss of earning capacity resulting from an injury"). Through the mechanism furnished by § 51, where an injured employee has proved by a preponderance of the evidence that, but for his work-related injury, he would have earned a higher wage in the open labor market than he was earning at the time of injury, the employee is entitled to compensation based on the higher wages he would be expected to earn when he would have expected to earn them.[9] See *Sliski's Case*, *supra* at 132, quoting *Louis* v. *Anthony's Pier Four*, 8 Mass. Workers' Comp. Rep. 311, 323 (1994) (Fischel, J., dissenting) (§ 51 measures "lost wage increases by looking to 'the total industrial capacity deficit, not simply the previously injured worker's residual capacity' ").

In evaluating whether an injured employee has furnished sufficient evidence to prove that he "was of such age and experience when injured that, under natural conditions, in the open labor market, his wage would be expected to increase," we set various parameters. First, we agree with the Appeals Court that § 51 "plainly speaks to the employee's vocational profile 'when injured,' " so the employee's post-injury training and activities may not be used in determining an employee's eligibility for a

---

§ 2A, amendments "deemed to be procedural . . . shall have application to personal injuries irrespective of the date of their occurrence, unless otherwise expressly provided." See *Sliski's Case*, 424 Mass. 126, 129-130 (1997).

[9]For example, where an employee was a licensed electrician at the time of his industrial injury in 1991, and would have earned the higher wage of a master electrician by the end of 1993, the employee was entitled to compensation based on the average wages of a master electrician beginning on January 1, 1994. See *Hughes* v. *D & D Elec. Contrs., Inc.*, 11 Mass. Workers' Comp. Rep. 314, 316 (1997).

§ 51 wage enhancement. *Wadsworth's Case*, 78 Mass. App. Ct. 101, 105 (2010). See *Sliski's Case, supra* at 135 (focusing on "employee's abilities and prospects at the time of injury").

Second, the employee must demonstrate that he was on a path before his injury that, for a person of his age and experience under natural conditions, likely would have led to a wage increase in the open labor market based on the acquisition or development of skills, education, or work experience, or from anticipated job progression such as the transition from an apprentice to a journeyman to a master. See *id.* An anticipated wage increase to offset a reduction in purchasing power arising from inflation is not enough to support a wage enhancement under § 51; the employee must demonstrate that his earning capacity would likely have increased beyond the rate of inflation. See *id.* at 134-135 (noting that inflationary changes are compensated under § 34B).

Third, where an employee seeks to rely on preinjury employment aspirations, the employee must demonstrate tangible steps taken before injury toward achieving those aspirations. See, e.g., *Ellis* v. *Briggs Landscape Constr. Co.*, 24 Mass. Workers' Comp. Rep. 259, 262 (2010), *S.C.*, 80 Mass. App. Ct. 1110 (2011) ("preliminary steps . . . [or] mere intention to attempt to enter [a] line of work cannot support [a] claim under § 51"); *Bruenell* v. *Framingham*, 23 Mass. Workers' Comp. Rep. 133, 136 (2009) ("rank speculation" regarding future skill acquisition not sufficient); *Klimek* v. *Wilbraham Toyota Volkswagen*, 17 Mass. Workers' Comp. Rep. 527, 530-532 (2003). Where an employee asserts as the basis for his § 51 wage enhancement claim that he had sought or planned to seek higher-paid employment, the employee must demonstrate with objective evidence that he likely would have achieved such employment but for his injury. See, e.g., *Ellis* v. *Briggs Landscape Constr. Co., supra.*[10]

---

[10]In determining whether an employee before his injury was on a foreseeable path to a higher wage, we are not confined to whether the employee would likely have received a wage increase from his employer or industry at the time of injury. G. L. c. 152, § 51. Statute 1991, c. 398, § 78, expressly overruled this court's holding in *Gagnon's Case*, 228 Mass. 334, 338 (1917), that "the circumstances to which weight can be given must be confined to the particular employer and kind of industry in which the injury was received." See L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 18.5,

Here, the employee began work at the age of fourteen as a farmhand, milking cows, plowing fields, and repairing farm equipment. He attended high school for four years but did not graduate. In high school, he took trade courses, including mechanics, automotive shop, drafting, woodworking, and welding. While in high school, he worked as a short-order cook and did some roofing and siding work. He enlisted in the Navy but was honorably discharged because of a medical condition. After leaving the Navy, he returned to work as a short-order cook before getting a job at New England Concrete doing spot welding. When he was not welding on the job, he worked as a laborer performing other tasks, such as mixing cement and operating a metal rolling machine.

Before he was injured, he had taken no steps to obtain his high school graduate equivalency degree (GED) or special training in welding, either on- or off-the-job. He "had dreams of working on a big building welding," but he had taken no tangible steps before his injury to realize that dream. After the injury, the employee obtained his GED and enrolled in a two-year vocational training program to become a machinist, where he completed the classroom portion of the training but could not perform the practical training because of the physical limitations of his right hand arising from his work injury.

The board correctly concluded that the administrative judge erred by relying in part on the employee's postinjury education and training in finding that he was acquiring the skills needed to make him eligible for wage enhancement under § 51. We also agree with the board's determination that there was insufficient evidence to support the administrative judge's finding that the employee's wages "would be expected to have increased considerably based upon skill and knowledge and experience

---

at 26 (3d ed. 2003 & Supp. 2011). As a result, where an employee is in school, is likely to graduate, and is injured in part-time employment, an administrative judge may consider when setting average weekly wage projections under § 51 any noninflationary wage increase anticipated on graduation, even if from a different job or industry. G. L. c. 152, § 51. To inform this calculation, an administrative judge is permitted to consider evidence of wages that the employee would likely have earned "in the open labor market" with the "age and experience" that the employee would have possessed at the time of graduation, had the employee not been injured.

acquisition if not for the horrific industrial injury." The administrative judge found that the employee had the "requisite aptitude, interest, knowledge, motivation and ability to develop valuable skills in a variety of vocational endeavors." But this finding demonstrated only that the employee had the potential for wage growth at the time of his injury. An employee's potential for wage growth is not enough to support a § 51 finding; the employee must prove that he was on a path to realize that potential and likely would have done so within a foreseeable time frame but for the interruption due to his injury.

The evidence here, even viewed generously, did not demonstrate that the employee was on a path toward a wage increase at the time of his injury. The employee performed various welding tasks, for which he received no special training, and when he was not welding, he performed various tasks as a laborer, for which he also received no special training. Prior to his injury, he was not an apprentice, advancing his education, or pursuing further job training, and there was no evidence that his wage could be expected to increase at a rate greater than the rate of inflation based on additional skills, education, experience, or job progression. Nor was he receiving a particularly low wage; at the time of his injury in December, 1980, although the employee was only twenty-two years old, he was earning $309.65 per week, which was twenty-six per cent above the Statewide weekly wage of $245.48 per week for all workers in 1980. See Department of Industrial Accidents Circular Letter No. 339 at Table I (rev. Oct. 4, 2011), reprinted in Nason, Koziol, & Wall, *supra* at Appendix M, at 626. For these reasons, we conclude that the board was not arbitrary or capricious, or relying on an error of law, when it concluded that the employee was not entitled to a wage enhancement under § 51.

2. *Compensation under § 35B.* General Laws c. 152, § 35B, provides:

> "An employee who has been receiving compensation under this chapter and who has returned to work for a period of not less than two months shall, if he is subsequently injured and receives compensation, be paid such compensation at the rate in effect at the time of the subsequent injury whether or not such subsequent injury is determined to be a recurrence of the former injury; pro-

vided, that if compensation for the old injury was paid in a lump sum, he shall not receive compensation unless the subsequent claim is determined to be a new injury."

Before § 35B was enacted in 1970 (see St. 1970, c. 667, § 1), an employee who had suffered a compensable injury but returned to work and again became unable to work because of a recurrence of the earlier injury received workers' compensation benefits based on the wages he earned at the time of the earlier injury, not the wages he earned when he again became unable to work. See *Don Francisco's Case*, 14 Mass. App. Ct. 456, 460 (1982). Under § 35B, where an employee had an earlier compensable injury but later returned to work for at least two months, and during his new period of employment is "subsequently injured" due to a recurrence of the former injury, the employee is paid compensation at the rate in effect at the time of the subsequent injury.[11] See *id*. at 460-462.

The administrative judge concluded that § 35B applied to the employee's case, finding that his medical condition arising from the 1980 injury worsened to leave him totally disabled as of July 1, 2003, when he was earning $586 per week with an employer in Connecticut. The board did not challenge the judge's finding that the employee in 2003 suffered a recurrence of the 1980 injury, but concluded that the wages the employee earned in 2003 could not be used to establish his average weekly wage for calculation of his benefits because the wages were earned out of State. As a result, the board concluded that the employee's weekly benefit must be based on his average weekly wage ($309.65) at the time of the 1980 injury.

---

[11]If an employee is unable to work because of a new injury rather than a recurrence of a prior injury, the employee's workers' compensation benefits are also determined based on the rate in effect at the time of the new injury, but the insurer responsible for paying the benefits is the insurer at the time of the new injury. See *Sliski's Case*, 424 Mass. 126, 131 (1997), quoting *Evans's Case*, 299 Mass. 435, 436-437 (1938). See also *Frye's Case*, 361 Mass. 848, 848 (1972), citing *Fitzpatrick's Case*, 331 Mass. 298, 300 (1954).

Where an employee's injury is a recurrence of an earlier work injury, the insurer responsible to pay the benefits is the insurer of the earlier employer. See, e.g., *Rock's Case*, 323 Mass. 428, 430 (1948) (first insurer liable where no later "independent intervening cause for [the employee's] subsequent incapacity"). See also *Dillon's Case*, 335 Mass. 285, 289 (1957) (first insurer liable for "residuals and symptoms" solely attributable to first injury).

The board rested this conclusion on our opinion in *Letteney's Case*, 429 Mass. 280, 286 (1999), where we held that only employment by Massachusetts employers should count in the calculation of benefit awards under a different section of the workers' compensation act, G. L. c. 152, § 35C. There, the employee was exposed to asbestos while working for a Massachusetts employer in 1955, left that job in 1959, and went to work for another Massachusetts employer until 1986, when he moved to Florida and became self-employed. *Id.* at 281. The employee, while still living in Florida, was forced to retire in 1991 because of mesothelioma he had contracted from his exposure in the 1950s to asbestos, and he died one year later. *Id.* Under § 35C, where five or more years elapse between the date of injury and the disabling effect of that injury that renders the employee eligible for benefits arising from his incapacity for work, "the applicable benefits shall be those in effect on the first date of eligibility for benefits," not the date of injury. We held that the employee was entitled to compensation from the insurer of his 1955 employer measured by his average weekly wage in 1986, when he last worked for another Massachusetts employer, and not by his average weekly wage in 1991 when he was disabled while self-employed in Florida. *Id.* at 283-286.

We determined in *Letteney's Case, supra* at 283-284, that we could not discern from the plain meaning of the language of § 35C whether out-of-State self-employment wages should count in the calculation of compensation. After deciding that the text of the statute did not compel a conclusion, we discerned "a legislative conception that such excess § 35C awards are a responsibility of all covered Massachusetts employers in common, and that therefore only employment by covered employers should count in the calculation of such awards." *Id.* at 286. We reasoned:

> "Compensation to the employee measured by earnings outside the Massachusetts workers' compensation system constitutes a liability for which neither the employer nor any other Massachusetts employer has provided. It may be said that this happens whenever an employee receives a higher award than that measured by the last wage the employee earned from the employer for whom he worked

at the time he sustained the injury. That would not be a valid objection. The later Massachusetts employer paying that higher wage would presumably have paid premiums based on that higher wage. Although that later employer would not be liable for the higher award, its participation in the general system may be supposed, at least roughly, to work out in the long run when it must pay higher compensation for subsequent earnings of its employees earned elsewhere in the system. Self-employment, out-of-State employment, and other excluded employment are not within the system and thus this long-run equilibration cannot take place." (Footnote omitted.)

*Id.* at 285. We need not in this case revisit our holding in *Letteney's Case, supra,* with respect to § 35C benefits, because § 35C does not apply to this employee's injuries. We need only determine whether to apply the reasoning of that case to exclude out-of-State wages to calculate benefits under § 35B. We will not.

"[I]t is established that the [workers'] compensation act is to be construed broadly, rather than narrowly, in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design." *Johnson's Case,* 318 Mass. 741, 746 (1945). "[T]he 'beneficent design' that the workers' compensation scheme seeks to accomplish is 'wage replacement' for injured employees, . . . which is to be calculated on the basis of the injured employee's earning capacity." *Sellers's Case,* 452 Mass. 804, 810 (2008), quoting *McDonough's Case,* 448 Mass. 79, 83 (2006). The enactment of § 35B reflects a legislative determination that, where a previously injured employee has returned to work for at least two months and suffers a subsequent injury that again incapacitates him from work, his earning capacity is best measured by the wages he was earning at the time of his subsequent injury at his new employment rather than at the time of his initial injury at his prior employment. See *Don Francisco's Case,* 14 Mass. App. Ct. 456, 460 (1982) (prior to enactment of § 35B, "the compensation bore no relationship to the wages being earned on the date the employee again became unable to work," which was "inconsistent with the purpose of the [Workers' Compensation] Act"). As a measure of earning

capacity, it matters not whether the wages are earned in Massachusetts or outside Massachusetts. "The words of § 35B are plain and unambiguous. 'An employee . . . shall . . . be paid such compensation at the rate in effect at the time of the subsequent injury.' These words are mandatory, not precatory." *Taylor's Case*, 44 Mass. App. Ct. 495, 499 (1998), quoting G. L. c. 152, § 35B.

Our holding in *Letteney's Case, supra* at 283-286, was premised on the expectation that an employee's average weekly wage at the time of eligibility for incapacity benefits, which for § 35C to apply must be at least five years after the date of injury, was "likely to be considerably higher" than his average weekly wage at the time of injury because of "the accrual of seniority, and the effect of inflation." Our concern was that providing compensation based on out-of-State wages may constitute a "liability for which neither the employer nor any other Massachusetts employer has provided." *Letteney's Case, supra* at 285. The risk of this unfunded insurance liability is likely to be less under § 35B than § 35C. An employee may be eligible for benefits under § 35C if the employee had never before been incapacitated from work, but an employee may be eligible for benefits under § 35B only if the employee previously had a work-related injury that led to an incapacity mandating compensation. Employees incapacitated by a prior work-related injury, once they regain their capacity to perform work, often must accept lower-paid employment because of limitations arising from their prior injury. See, e.g., Boden, Economic Consequences of Workplace Injuries and Illnesses: Lost Earnings and Benefit Adequacy, 36 Am. J. Indus. Med. 487, 501 (1999) (quantifying "lost earnings" of various types of injured workers in Wisconsin and showing that even workers in "temporary disability groups suffer [wage] losses that continue well after" returning to work "even if they fully recover from the effects of the injury"); Executive Summary, Findings and Recommendations on California's Permanent Partial Disability System, Institute of Civil Justice of the RAND Corporation at 8 (1997) ("Even after five years, [permanent partial disability] claimants who have returned to work earn 20 percent less than comparable uninjured workers"). Cf. *Louis's Case*, 424 Mass.

136, 138-142 (1997) (partial disability payments received by employee following work-related injury should be included in calculation of employee's average weekly wage where employee suffers subsequent injury in course of employment).

The risk of a substantial unfunded liability is also limited by the difference between the "[m]aximum weekly compensation rate," which places a cap on workers' compensation base payments of "one hundred per cent of the average weekly wage in the commonwealth," G. L. c. 152, § 1 (10), and the "[m]inimum weekly compensation rate," which places a floor on base payments of "twenty per cent of the average weekly wage in the commonwealth." G. L. c. 152, § 1 (11). For an injury that recurs in March, 2012, for example, this sets a cap of $1,135.82 per week, or $59,062.64 per year, and a floor of $227.16 per week, or $11,812.32 per year, for workers' compensation base payments. See Department of Industrial Accidents Circular Letter No. 339 at Table III (rev. Oct. 4, 2011), reprinted in Nason, Koziol, & Wall, *supra* at Appendix M, at 627. The worst case of an increase in liability, that is, the increased liability in the scenario where the employee before initial injury earns the minimum wage in Massachusetts, and then after initial injury moves out of State and earns many times that original amount when subsequently injured, is the difference between the upper and lower bounds, or $47,250.32 per year. Given this relatively modest maximum liability, which the original insurer already bears where the employee is subsequently injured in Massachusetts from a recurrence of an earlier workplace injury, we do not believe that today's decision will place a significant burden on insurers or act to increase unfairly workers' compensation premiums.[12]

We therefore reverse the board's determination that the employee is not eligible for § 35B benefits because his subsequent injury occurred while he was employed outside Massachusetts. The employee is entitled to the calculation of

---

[12]We also note that since 1980 the average yearly wage in Massachusetts has been five to thirty per cent higher than the average yearly wage in the United States. See United States Department of Commerce, Bureau of Economic Analysis Table SA1-3 Personal Income Summary (2012). In other words, the inclusion of out-of-State wages in calculating benefits under § 35B may potentially *lower* insurer liability.

benefits under § 35B based on the average weekly wage he received from his Connecticut employer at the time of his subsequent injury.

3. *Recoupment.* The insurer pursued recoupment of $34,169.73 for the overpayment of benefits during the period of 1985 to 1988.[13] The administrative judge denied the recoupment claim, but the board vacated the denial because it was without explanation or subsidiary findings, and permitted the insurer to renew its claim for recoupment in a separate complaint. We conclude that the board was not arbitrary or capricious in vacating the denial of recoupment based on the absence of any explanation or findings by the administrative judge in support of the denial. But we note, as did the Appeals Court, that, if the insurer were to press its claim for recoupment, a judge would need carefully to consider whether recoupment was in accord with equitable principles. See *Wadsworth's Case*, 78 Mass. App. Ct. 101, 109-110 (2010).

Where an insurer has made overpayments of workers' compensation benefits other than pursuant to a conference order,[14] recoupment, as the board noted, is subject to equitable principles. In deciding whether recoupment would be equitable, a judge must consider "competing interests, such as the employee's culpability, the employer's negligence, the employee's ability to repay and the hardship if any, that the employee may suffer, and the amount of the overpayment." Nason, Koziol, & Wall, *supra* at § 16.24 n.23. *Giancola* v. *Price Chopper*, 25 Mass. Workers' Comp. Rep. 109, 110 n.4 (2011). Here, where the insurer allowed so many years to elapse between the time of overpayment and the claim for recoupment, a judge must also consider the equitable defense of laches.

"Laches is an equitable defense consisting of unreasonable delay in instituting an action which results in some injury or prejudice to the defendant." *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 707 (1979). "Laches is not mere delay, . . . but

[13]The insurer also alleges that it mistakenly paid out weekly incapacity benefits to the claimant of approximately $150 per week for three years after the claimant was disabled on July 1, 2003.

[14]See G. L. c. 152, § 11D (3) (insurer that overpaid compensation pursuant to conference order "shall . . . be entitled to recover such overpayments").

delay that works disadvantage to another." *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 517 (2005), quoting *Calkins* v. *Wire Hardware Co.,* 267 Mass. 52, 69 (1929). "The operation of laches generally is a question of fact for the judge, and a judge's finding as to laches will not be overturned unless clearly erroneous." *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund, supra.* Where an insurer's delay is unreasonable, and where an employee in repaying these funds would suffer substantial prejudice that could have been avoided had the insurer promptly asserted its rights, an insurer equitably is not entitled to recoupment. See *Garfield* v. *Garfield,* 327 Mass. 529, 534 (1951) (plaintiffs barred by laches from asserting claim twenty-seven years after accrual where delay was "inordinate" and "clearly prejudicial to the defendants"); *Randon* v. *Edstrom,* 1 Mass. App. Ct. 796, 798-799 (1974) (plaintiff barred by laches from challenging conveyance twenty-two years later where no excuse for delay and substantial prejudice).

4. *Conclusion.* We affirm the board's conclusion that the employee has established a total and permanent incapacity and is entitled to § 34A benefits from the insurer, and that the employee is not entitled to the calculation of benefits under § 51. We reverse the board's conclusion that the employee is not entitled to the calculation of § 34A benefits under § 35B, and we remand to the board for the recalculation of benefits in accordance with this decision. We affirm the board's vacating of the denial of recoupment and its allowance of the insurer to renew its claim for recoupment in a separate complaint, subject to equitable principles. Because the employee has prevailed on his claim for the recalculation of § 34A benefits under § 35B, we order the insurer to pay the employee's reasonable attorney's fees and expenses resulting from the appeal from the board decision pursuant to G. L. c. 152, § 12A, and *Fabre* v. *Walton,* 441 Mass. 9, 10-11 (2004).

*So ordered.*