ROBERT LETTENEY'S (dependent's) CASE.

Suffolk. March 5, 1999. - April 5, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Workers' Compensation Act,* Amount of compensation, Average weekly wages. *Statute,* Construction.

This court concluded that the insurance scheme embodied in G. L. c. 152 contemplates no-fault compensation to workers for job-related injuries measured by earnings within, and not outside of, the Massachusetts workers' compensation system, and that an employee's self-employment or out-of-State employment cannot be used to determine the average weekly wage, for purposes of G. L. c. 152, § 35C, of an employee who becomes eligible for workers' compensation benefits as a result of an industrial injury that occurred five or more years prior to the date of eligibility. [280-286]

A reviewing board of the Department of Industrial Accidents correctly concluded that an employee's out-of-State self-employed average weekly wage that he was earning in 1991, at the time he became disabled from having been exposed to asbestos in the workplace in the 1950's, could not be used to calculate his average weekly wage in determining the level of workers' compensation benefits, and that the employee's compensation was properly measured by the average weekly wage last earned in Massachusetts in 1986 before he moved out of State. [280-286]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David J. McMorris* for the employee.

*Paul R. Ingraham,* Special Assistant Attorney General, for Workers' Compensation Trust Fund.

*Alan S. Pierce* for the employer.

FRIED, J. Only employment referred to in G. L. c. 152, § 1 (4), may be used in determining the average weekly wage, for purposes of G. L. c. 152, § 35C, of an employee who becomes eligible for workers' compensation benefits as a result of an industrial injury that occurred five or more years prior to the date of eligibility.

I

The claimant's husband, Robert Letteney (employee), had been employed at Hercules Powder Co. (Hercules), where he was exposed to asbestos. The last exposure was in 1955. The employee left the employ of Hercules in March of 1959. At that time he apparently took a job with another insured employer, where he continued to work until May of 1986, at which time he moved to Florida and went into business for himself. Mesothelioma forced him to retire from his business in 1991 and led to his death in June of 1992. The mesothelioma was the result of his exposure to asbestos during his work at Hercules. The claimant sought and was granted compensation under our workers' compensation act, G. L. c. 152 (as in effect at the time the claimant became eligible for benefits — at the employee's death in 1992). The only dispute relates to the level of that compensation.

An administrative judge of the Department of Industrial Accidents (department), construing G. L. c. 152, § 35C,[1] awarded compensation on the basis of the last average weekly wage the claimant's decedent earned while self-employed in Florida. Hercules and the Workers' Compensation Trust Fund (trust fund) appealed to the department's reviewing board (board), which reversed in a divided decision. The board based its decision on G. L. c. 152, § 1 (4), which defined an employee covered by the act as a "person in the service of another," and excluded, among others, masters of and seamen on vessels engaged in interstate or foreign commerce, professional athletes, and drivers of leased taxi cabs. The dissenting member of the board agreed with the administrative judge from whom the appeal had been taken that this definition was relevant only to the issue of coverage, which was conceded, and not to the determination of the level of compensation for a covered injury. The administrative judge had also pointed out that the same argument, that

[1]General Laws c. 152, § 35C, provides: "When there is a difference of five years or more between the date of injury and the initial date on which the worker or his survivor first became eligible for benefits under section thirty-one, thirty-four, thirty-four A, or section thirty-five, the applicable benefits shall be those in effect on the first date of eligibility for benefits.

"For purposes of adjustment to compensation under sections thirty-four B and thirty-five F for employees subject to this section, the first date of eligibility for benefits rather than the date of injury shall be used for purposes of computing such supplemental benefits."

self-employment wages would not count in determining the level of compensation under § 35C, would compel the conclusion that wages earned in out-of-State employment could also not be used to calculate the last average weekly wage in determining compensation. The claimant appealed. We transferred the case here on our own motion and affirm the decision of the reviewing board.

## II

Since its first enactment in 1911, St. 1911, c. 751, Part V, our workers' compensation law was conceived as a system of insurance to replace in part the wages lost by workers or their dependents as a result of injuries suffered in connection with their work. See generally L. Locke, Workmen's Compensation 1-25 (Nason & Wall Supp. 1995). There would be the time when an injury occurred, followed more or less directly by the death or disability resulting from that injury, which is what created eligibility under the scheme. See *Zerofski's Case*, 385 Mass. 590, 594-595 (1982).

As part of a comprehensive revision of our workers' compensation law, see L. Locke, Workmen's Compensation, *supra*, the Legislature addressed the problem of workers suffering injuries, the disabling effects of which are felt only many years later and during which time the worker may have continued to be gainfully employed. The typical example of such an injury is asbestos exposure, the ill effects of which may become apparent only decades later. This is such a case.

General Laws c. 152, § 35C, provides the rule for such cases: Where five or more years elapse between the date of injury and the disabling effect of that injury, the wage replacement which the act provides is to be calculated not on the basis of the wages being earned at the time of the injury, but at the later time when the worker becomes eligible, that is the later time when he dies or becomes partially or totally disabled. This provision reversed the effect of our holding in *Squillante's Case*, 389 Mass. 396, 397 (1983):

> "Where an employee's injury results from a gradual exposure to harmful foreign matter the date of the injury is the date of last exposure to the foreign matter. . . . Often the date of last exposure coincides with the day when the employee is no longer able to continue his work because

of the cumulative effect of such exposure. . . . Here, the last date of exposure to asbestos occurred in 1945. The day that the employee was no longer able to work occurred in 1974, long after he had ceased his employment with [the employer]. In such a case, the date of injury is the date of last exposure, not the date of incapacity." (Citations omitted.)

And applying the law as it then stood, we were led to the conclusion that the compensation of the claimant's award must be made on the basis of his wages at the time of his injury. Section 35C was obviously meant to mitigate the rigors of that rule, and to calculate his lost earning capacity in terms of what he was earning at the time of his disability — in the language of the statute, at the time of his eligibility, which with the passage of time, the accrual of seniority, and the effect of inflation is likely to be considerably higher.

For a long time following his injury, the employee had been employed by another insured employer in the Commonwealth. There is no question that, due to this continued employment in Massachusetts by an employer subject to the workers' compensation laws (although an employer different from the one for whom he was working when the injury occurred), the claimant is entitled to compensation measured by the employee's average weekly wage from this subsequent employer, a significantly higher amount than if compensation was set at the date of injury.[2] The difficulty in this case arises from the circumstance that, for his last five years in the work force (well after the date of injury, the date of last exposure), the claimant's decedent had been self-employed in another State.

The claimant argues that the ameliorative purpose of § 35C requires that she be compensated at that higher rate, which reflects the employee's earning capacity at the time he became disabled, and not at the lower rate calculated on earnings as of the date of injury several years earlier. Because it is the purpose

[2]The compensation awarded on remand was based on the average weekly wage earned by the decedent at the last job he held for an employer who participated in the Massachusetts workers' compensation insurance system. This surely had a large effect on the level of compensation, as the employee worked for Hercules, the employer where the injury occurred, for only four years following the last exposure. His employment with the subsequent (insured) employer extended more than twenty-five years after he left the employ of Hercules, thus extending nearly thirty years from the time of injury.

of § 35C to compensate an employee in terms of his earning capacity, what he or his survivor have lost as result of the injury, then by the board's rule the claimant here will receive a good deal less than that. The board, Hercules, and the trust fund argue that, because self-employment (like employment out of the State) are outside what they call the "closed system" of the workers' compensation scheme, self-employment wages should not count for purposes of calculating compensation from within the scheme. Both sides invoke the rule of plain meaning. See, e.g., *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 537 (1992) ("It is a well-established canon of construction that, where the statutory language is clear, the courts must impart to the language its plain and ordinary meaning"); *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984) (intent of Legislature is to be ascertained from words of statute "construed by the ordinary and approved usage of the language"). The trouble is that there is no very plain meaning here.

Weighing for the claimant is the ameliorative purpose of the statute, coupled with the absence of any explicit provision stating that for the purposes of calculating compensation under § 35C only covered Massachusetts employment will count. Weighing for the board are the definition of "employee" in § 1 (4), which does spell out such an exclusion, and the references in § 35C to other sections of the act, all of which use that defined term "employee." And these textual arguments are coupled with the conception of workers' compensation as an insurance scheme funded entirely by the contributions of Massachusetts employers.

The text, it must be acknowledged, compels neither conclusion, and it may be surmised that this is because the Legislature did not advert to the precise issue before us. But such specific advertence is not necessary if the scheme as a whole suggests a particular resolution. The Legislature need not, and indeed cannot, anticipate every circumstance that may arise under a general principle it enacts. It is for us to deduce what that principle requires. The board's conclusion is supported by a consideration of the kind of scheme that the Legislature has enacted.

The Legislature has enacted an insurance scheme. Employees give up their right to sue their employers in tort in return for a right to compensation for job-related injuries, whether or not the employer was at fault. See generally L. Locke, Workmen's

Compensation, *supra* at § 1.0. The employer is required to insure unless it qualifies as a self-insurer. G. L. c. 152, § 25A.

Compensation to the employee measured by earnings outside the Massachusetts workers' compensation system constitutes a liability for which neither the employer nor any other Massachusetts employer has provided. It may be said that this happens whenever an employee receives a higher award than that measured by the last wage the employee earned from the employer for whom he worked at the time he sustained the injury. That would not be a valid objection. The later Massachusetts employer paying that higher wage would presumably have paid premiums based on that higher wage. Although that later employer would not be liable for the higher award, its participation in the general system may be supposed, at least roughly, to work out in the long run when it must pay higher compensation for subsequent earnings of its employees earned elsewhere in the system.[3] Self-employment, out-of-State employment, and other excluded employment are not within the system and thus this long-run equilibration cannot take place.

Where an employee is injured by an employer who is required to but illegally has not insured, the worker obtains his compensation from the trust fund, to which all Massachusetts employers are required to contribute. See G. L. c. 152, § 65 (2).[4] See generally 452 Code Mass. Regs. § 3.04 (1997). The trust fund may then seek to recover the award from the delinquent

---

[3]Revenue for the trust fund and for the certain operating expenses of the department is raised by an assessment on all employers subject to the workers' compensation law. G. L. c. 152, § 65 (2). Under the statutory scheme, the department receives a report annually detailing a base amount for each employer. G. L. c. 152, § 65 (3). The base amounts are aggregated and used to determine the employer assessment rate, which is tied to the losses paid by all employers under the chapter for the preceding calendar year. *Id.* This figure is then converted to a factor corresponding to a percentage of the insured's standard workers' compensation premium. G. L. c. 152, § 65 (5). The assessment rates are determined according to the projected budgets necessary to pay the department's annual operating expenses and for the estimated amount of payments during the following year for compensation from the trust fund.

[4]Section 65 (2), as appearing in St. 1991, c. 398, § 85, provides in part: "There is hereby established a trust fund in the state treasury, known as the Workers' Compensation Trust Fund, the proceeds of which shall be used to pay or reimburse for the following compensation: . . . (e) . . . approved claims against [uninsured] employers . . . ."

employer. See G. L. c. 152, § 65 (8)[5]; 452 Code Mass. Regs. 3.04 (6). This is a further demonstration that all Massachusetts employers participate in a common system, and thus that it would be unfair to measure their obligations by events occurring outside of that system. Finally and most pertinently, an employer paying excess compensation by virtue of § 35C (excess in the sense that it is measured by higher wages earned after the employee has left the employer's service) is entitled to reimbursement from the trust fund. G. L. c. 152, § 65 (2) (*b*). Thus all Massachusetts employers contribute to the pool from which the excess award the claimant seeks here will be paid. This more than suggests a legislative conception that such excess § 35C awards are a responsibility of all covered Massachusetts employers in common, and that therefore only employment by covered employers should count in the calculation of such awards.

The decision of the reviewing board is affirmed.

*So ordered.*

---

[5]Section 65 (8), as appearing in St. 1991, c. 398, § 88, provides in part: "If the trust fund pays compensation to a claimant pursuant to clause (*e*) of subsection (2), it may seek recovery from the uninsured employer for an amount equal to the amount paid on behalf of the claimant . . . plus any necessary and reasonable attorney fees."