NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12873

DANIEL WRIGHT'S CASE.


Suffolk.     May 5, 2020. - October 27, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.[1]


Marijuana, Medical.  Workers' Compensation Act, Insurer, Medical
    benefits.  Words, "Health insurance provider."



Appeal from a decision of the Industrial Accident Reviewing
Board.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Katherine L. Lamondia-Wrinkle for the claimant.
Leonard Y. Nason (James E. Ramsey also present) for the
insurer.
Wystan M. Ackerman, for American Property Casualty
Insurance Association, amicus curiae, submitted a brief.
Matthew J. Walko & Pauline A. Jauquet, for Mass General
Brigham Incorporated, amicus curiae, submitted a brief.


KAFKER, J.  In the instant case we are asked to determine

---

[1] Chief Justice Gants participated in the deliberation on
this case prior to his death.

whether an insurance company may be ordered to reimburse an employee for medical marijuana expenses pursuant to a general provision of the Massachusetts workers' compensation scheme that requires reimbursement of necessary and reasonable medical expenses.  The claimant, Daniel Wright, sought compensation for $24,267.86 of medical marijuana expenses to treat chronic pain stemming from two work-related injuries he sustained in 2010 and 2012.  His claim was denied by an administrative judge, and the denial was affirmed on appeal by the reviewing board of the Department of Industrial Accidents (department).  The reviewing board concluded that marijuana's status as a federally illicit substance preempted any State level authority to order a workers' compensation insurer to pay for Wright's medical marijuana expenses.  We likewise conclude that the workers' compensation insurer cannot be required to pay for medical marijuana expenses, but do so based on the medical marijuana act itself.

We recognize that the current legal landscape of medical marijuana law may, at best, be described as a hazy thicket. Marijuana is illegal at the Federal level and has been deemed under Federal law to have no medicinal purposes, but Massachusetts, as well as the majority of States, have legalized medical marijuana and created regulatory schemes for its administration and usage.  Complicating and confusing matters

further, Congress has placed budgetary restrictions on the ability of the United States Department of Justice to prosecute individuals for marijuana usage in compliance with a State medical marijuana scheme, and the Department of Justice has issued, revised, and revoked memoranda explaining its marijuana enforcement practices and priorities, leaving in place no clear guidance.

The Commonwealth's original medical marijuana act, St. 2012, c. 369 (act or medical marijuana act), was carefully drafted by its sponsors to take into account this most difficult regulatory environment, with provisions specifically designed to avoid possible conflicts with the Federal government.  One such provision of the law expressly states that "[n]othing in this law requires any health insurance provider, or any government agency or authority, to reimburse any person for the expenses of the medical use of marijuana."  St. 2012, c. 369, § 7 (B).  See G. L. c. 94I, § 6 (i).  This provision recognizes that when medical marijuana patients seek to recover the costs of such use from third parties, including insurance companies engaged in interstate commerce, the regulatory environment becomes even more problematic.  Under the plain language of this provision, those insurers are not required to reimburse medical marijuana expenses for a substance that remains illegal under Federal law. We conclude that this specific language, and the Federal

concerns it seeks to address and avoid, is controlling and not overridden by the general language in the workers' compensation laws requiring workers' compensation insurers to reimburse for reasonable medical expenses. A contrary reading of this specific language, which states that health insurers and government agencies and authorities are not required to reimburse medical marijuana expenses, would have been completely misleading to those who voted on it. It is one thing for a State statute to authorize those who want to use medical marijuana, or provide a patient with a written certification for medical marijuana, to do so and assume the potential risk of Federal prosecution; it is quite another for it to require unwilling third parties to pay for such use and risk such prosecution. The drafters of the medical marijuana law recognized and respected this distinction.[2]

1. Background. a. Federal statutory landscape. The Controlled Substances Act (CSA) provides the relevant Federal legislative backdrop against which the current litigation stands. Passed in 1970, the CSA creates a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner

---

[2] We acknowledge the amicus briefs submitted by the American Property Casualty Insurance Association and Mass General Brigham Incorporated, in support of Central Mutual Insurance Company (Central Mutual).

authorized by the CSA." Gonzales v. Raich, 545 U.S. 1, 10, 13 (2005) (Raich). The CSA sets forth five schedules to classify and regulate the use of controlled substances. Id. at 13. "The drugs are grouped together based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." Id. "Schedule I contains the most severe restrictions on access and use, and [s]chedule V the least." Gonzales v. Oregon, 546 U.S. 243, 250 (2006). Marijuana is classified under schedule I.[3] See 21 U.S.C. § 812(c). Pursuant to its schedule I classification, marijuana is deemed to have (1) a high potential for abuse; (2) no currently accepted medical use in the United States; and (3) a lack of accepted safety for use under medical supervision. 21 U.S.C. § 812(b)(1). See United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 493 (2001) ("Congress has made a determination that marijuana has no medical benefits worthy of an exception"). Accordingly, as a schedule I drug, marijuana may not be prescribed. See id. at 491. The United States Supreme Court has also rejected the contention that the CSA includes an implicit necessity defense for the manufacture and distribution of schedule I drugs on the basis of medical need.

---

[3] Very recently, however, hemp-derived cannabidiol (CBD) was removed from schedule I. See Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018 (2018).

Id. at 494.

The consequences of marijuana's status as a schedule I drug are significant.  With one exception not relevant here,[4] the manufacture, distribution, or possession of a schedule I substance is a Federal offense.  See 21 U.S.C. §§ 841(a)(1), 844(a).  See also Raich, 545 U.S. at 14.  An individual found in possession of a schedule I substance may be sentenced to one year of imprisonment, a fine of at least $1,000, or both.  See 21 U.S.C. § 844(a).  The same penalties also apply to anyone who "attempts or conspires to commit" such an offense.  See 21 U.S.C. § 846.  Additionally, an individual who "aids, abets, counsels, commands, induces or procures" the commission of a Federal offense, including a violation of the CSA, may be subject to the same penalties as the principal.  See 18 U.S.C. § 2(a).  Thus, it is a Federal crime not only to possess marijuana, but also to conspire to do so or to aid or abet the possession of marijuana.  Accordingly, regardless of the legal status of marijuana at the State level, marijuana users, and those who aid or abet the distribution or possession of marijuana, "remain[] potentially subject to Federal criminal

---

[4] The Controlled Substances Act (CSA) provides a very narrow exception for the use of schedule I drugs in research studies that have been preapproved by the United States Food and Drug Administration.  See 21 U.S.C. § 823(f).  See also Gonzales v. Raich, 545 U.S. 1, 14 (2005).

prosecution."  Barbuto v. Advantage Sales & Mktg., LLC, 477

Mass. 456, 460 (2017).

b.  Massachusetts medical marijuana law.  In 2012,

Massachusetts voters approved a ballot initiative to legalize

the use of marijuana for medicinal purposes in the Commonwealth.

See St. 2012, c. 369.[5]  The stated purpose of the act provides

that "there should be no punishment under state law for

qualifying patients, physicians and health care professionals,

personal caregivers for patients, or medical marijuana treatment

center agents for the medical use of marijuana, as defined

herein."  See St. 2012, c. 369, § 1.  The act first sets out

"the parameters of protection from State prosecution and

penalties that the act respectively gives to physicians and

health care professionals, qualifying patients and their

personal caregivers, and licensed dispensary agents."

Commonwealth v. Canning, 471 Mass. 341, 345 (2015).  Pursuant to

the act, "[a]ny person meeting the requirements under this law

shall not be penalized under Massachusetts law in any manner, or

_____

[5] In December 2018, St. 2012, c. 369 (act), was codified as
G. L. c. 94I.  See St. 2017, c. 55, §§ 44, 82.  See also
Commonwealth v. Richardson, 479 Mass. 344, 349 n.7 (2018).
During the time period for which Wright seeks reimbursement,
however, the act remained in effect as originally enacted.
Moreover, the statutory provisions relevant to our analysis
remain substantively unaltered by the codification in G. L.
c. 94I.  For ease of reference, we will include parallel
citations to the current statutory and regulatory scheme where
appropriate.

denied any right or privilege, for such actions." St. 2012, c. 369, § 4. See G. L. c. 94I, § 2. See also G. L. c. 94G, § 7. Further, "[a] qualifying patient or a personal caregiver shall not be subject to arrest or prosecution, or civil penalty, for the medical use of marijuana," provided he or she meets the requirements of the law. St. 2012, c. 369, § 4. See G. L. c. 94I, § 2. See also G. L. c. 94G, § 7. Additionally, "[t]he lawful possession, cultivation, transfer, transport, distribution, or manufacture of medical marijuana as authorized by [the act] shall not result in the forfeiture or seizure of any property." St. 2012, c. 369, § 6 (A). See G. L. c. 94I, § 2 (b) (4). The act then "establishes a medical marijuana registration or licensing regime . . . that covers nonprofit medical marijuana treatment centers, medical marijuana center dispensary agents, and qualifying patients and personal caregivers." Canning, supra.

At the same time, however, the act contains a number of limitations. It provides that "[n]othing in [the act] requires the violation of federal law or purports to give immunity under federal law . . . [or] poses an obstacle to federal enforcement of federal law." St. 2012, c. 369, § 7 (F), (G). See 935 Code Mass. Regs. § 501.840(2)(f), (g) (2019). Additionally, and most relevant here, the act states that "[n]othing in this law requires any health insurance provider, or any government agency

or authority, to reimburse any person for the expenses of the medical use of marijuana."  St. 2012, c. 369, § 7 (B).  See G. L. c. 94I, § 6 (i).  See also 935 Code Mass. Regs. § 501.840(2)(b).  This language is substantially similar to reimbursement restrictions found in at least twenty-two[6] other

---

[6] See Ark. Const. amend. XCVIII, § 6 ("This amendment does not require . . . [a] government medical assistance program or private health insurer to reimburse a person for costs associated with the medical use of marijuana unless federal law requires reimbursement"); Colo. Const. art. XVIII, § 14(10)(a) ("No governmental, private, or any other health insurance provider shall be required to be liable for any claim for reimbursement for the medical use of marijuana").  See also Alaska Stat. § 17.37.040(c) ("A governmental, private, or other health insurance provider is not liable for any claim for reimbursement for expenses associated with medical use of marijuana"); Ariz. Rev. Stat. § 36-2814 ("Nothing in this chapter requires . . . [a] government medical assistance program, a private health insurer or a workers' compensation carrier or self-insured employer providing workers' compensation benefits to reimburse a person for costs associated with the medical use of marijuana"); Cal. Health & Safety Code § 11362.785 ("This article does not require a governmental, private, or any other health insurance provider or health care service plan to be liable for a claim for reimbursement for the medicinal use of cannabis"); Del. Code Ann. tit. 16, § 4907A ("Nothing in this chapter requires . . . [a] government medical assistance program or private health insurer to reimburse a person for costs associated with the medical use of marijuana"); Fla. Stat. § 381.986(15)(f) ("Marijuana, as defined in this section, is not reimbursable under [Florida's workers' compensation statute]"); 410 Ill. Comp. Stat. 130/40(d) ("Nothing in this Act may be construed to require a government medical assistance program, employer, property and casualty insurer, or private health insurer to reimburse a person for costs associated with the medical use of cannabis"); Me. Rev. Stat. tit. 22, § 2426 ("This chapter may not be construed to require . . . [a] government medical assistance program or private health insurer to reimburse a person for costs associated with the medical use of marijuana"); Mich. Comp. Laws

§ 333.26427(c)(1) ("Nothing in this act shall be construed to require . . . [a] government medical assistance program or commercial or non-profit health insurer to reimburse a person for costs associated with the medical use of marihuana"); Mont. Code Ann. § 39-71-407(6)(c) ("Nothing in this chapter may be construed to require an insurer to reimburse any person for costs associated with the use of marijuana for a debilitating medical condition . . ."); Nev. Rev. Stat. § 453A.800 ("The provisions of this chapter do not . . . [r]equire an insurer, organization for managed care or any person or entity who provides coverage for a medical or health care service to pay for or reimburse a person for costs associated with the medical use of marijuana"); N.H. Rev. Stat. Ann. § 126-X:3(III)(a) ("Nothing in this chapter shall be construed to require . . . [a]ny health insurance provider, health care plan, or medical assistance program to be liable for any claim for reimbursement for the therapeutic use of cannabis"); N.J. Stat. Ann. § 24:6I-14 ("Nothing in [the medical marijuana scheme] shall be construed to require a government medical assistance program or private health insurer to reimburse a person for costs associated with the medical use of cannabis . . ."); N.D. Cent. Code § 19-24.1-34 ("This chapter does not require . . . [a] government medical assistance program or private insurer to reimburse a person for costs associated with the medical use of marijuana"); Okla. Stat. tit. 63, § 427.8 ("Nothing in this act . . . shall . . . [r]equire an employer, a government medical assistance program, private health insurer, worker's compensation carrier or self-insured employer providing worker's compensation benefits to reimburse a person for costs associated with the use of medical marijuana"); Or. Rev. Stat § 475B.794 ("Nothing in [the medical marijuana statutes] requires . . . [a] government medical assistance program or private health insurer to reimburse a person for costs associated with the medical use of marijuana"); 35 Pa. Cons. Stat. § 10231.2102 ("Nothing in this act shall be construed to require an insurer or a health plan, whether paid for by Commonwealth funds or private funds, to provide coverage for medical marijuana"); R.I. Gen. Laws § 21-28.6-7(b)(1) ("Nothing in this chapter shall be construed to require . . . [a] government medical assistance program or private health insurer or workers' compensation insurer, workers' compensation group self-insurer, or employer self-insured for workers' compensation . . . to reimburse a person for costs associated with the medical use of marijuana"); Utah Code Ann. § 26-61a-112 ("Nothing in this chapter requires an insurer, a third-party administrator, or an employer to pay or

States with medical marijuana programs.[7]

c. Recent developments in Federal enforcement. Congress has not acted to change marijuana's classification as a schedule I drug since the legalization of medical marijuana in Massachusetts. It remains illegal to possess or distribute. See 21 U.S.C. §§ 841(a)(1), 844(a). Two years after the enactment of the Commonwealth's medical marijuana law, however, Congress passed an appropriations bill that included an amendment to restrict the Department of Justice's ability to prosecute medical marijuana patients. The amendment provides that "[n]one of the funds made available in this Act to the Department of Justice may be used, with respect to [an

reimburse for cannabis, a cannabis product, or a medical cannabis device"); Vt. Stat. Ann. tit. 18, § 4474c(b)(4) ("This chapter shall not be construed to require that coverage or reimbursement for the use of marijuana for symptom relief be provided . . . for purposes of workers' compensation . . . ."); Wash. Rev. Code § 69.51A.060(2) ("Nothing in this chapter establishes a right of care as a covered benefit or requires any state purchased health care . . . or other health carrier or health plan . . . to be liable for any claim for reimbursement for the medical use of marijuana").

[7] Four years after voters approved the medical marijuana ballot initiative, Massachusetts voters approved another ballot initiative legalizing the recreational use of marijuana. See St. 2016, c. 334. Use of the Commonwealth's medical marijuana program remains widespread even in the wake of the legalization of recreational marijuana, however. In 2019, nearly 1.3 million ounces of medical-use marijuana were sold in Massachusetts. See Cannabis Control Commission, The Cannabis Control Commission & Attorney General's Office Joint Report, at 8 (Feb. 2020). As of January 2020, there were over 60,000 active medical marijuana patients in the Commonwealth. Id.

enumerated list of States, including Massachusetts], to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana."  Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014).  The amendment thus "prohibits [the Department of Justice] from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws."  See United States v. McIntosh, 833 F.3d 1163, 1177 (9th Cir. 2016).  The amendment presently remains in effect through December 11, 2020.  See Pub. L. No. 116-159, §§ 101(2), 106(3) (2020); Pub. L. No. 116-93, § 531, 133 Stat. 2317, 2431 (2019).

At the same time, the Department of Justice has reversed its own stance toward the prosecution of medical marijuana cases multiple times.  The Department of Justice issued a series of memoranda during the administration of President Barack Obama advising Federal prosecutors not to prioritize the prosecution of individuals engaged in marijuana-related activities pursuant to a State medical marijuana law.  See D.W. Ogden, Deputy Attorney General, Memorandum for Selected United States Attorneys:  Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana (Oct. 19. 2009); J.M. Cole, Deputy Attorney General, Memorandum for All United States

Attorneys: Guidance Regarding Marijuana Enforcement (Aug. 29, 2013). This guidance was later rescinded under the administration of President Donald Trump. See J.B. Sessions, Attorney General, Memorandum for All United States Attorneys: Marijuana Enforcement (Jan. 4, 2018).

Following the rescission of the Obama administration guidance, the United States Attorney for the District of Massachusetts, Andrew Lelling, issued a statement that he could not "provide assurances that certain categories of participants in the state-level marijuana trade will be immune from federal prosecution." See Department of Justice, United States Attorney's Office, District of Massachusetts, Statement from U.S. Attorney Andrew E. Lelling Regarding Federal Marijuana Enforcement (Jan. 8, 2018). In another statement issued later the same year, Lelling reiterated that he would not "effectively immunize" Massachusetts residents from Federal marijuana law enforcement. See Department of Justice, United States Attorney's Office, District of Massachusetts, Statement from U.S. Attorney Andrew Lelling Regarding the Legalization of Recreational Marijuana in Massachusetts (July 10, 2018). He further stated, however, that he would focus prosecutorial resources on issues of overproduction, sales to minors, and organized crime and interstate transportation of drug proceeds. Id.

d.  Facts.  We turn now to the facts of the instant case.
On October 19, 2010, the claimant, Wright, injured his right
knee while stepping off a ladder in the course of his
employment.  At the time, he was employed by Unitek Global
Services (Unitek) as a cable installer.  He underwent surgery,
recovered, and sought new employment.  He eventually went to
work for Pioneer Valley Electric as an electrical apprentice.
On May 15, 2012, he sustained a second injury to his right knee
at work.  Wright underwent another surgery, which resulted in
numerous postoperative complications.  He developed deep vein
thrombosis and eventually was diagnosed with complex regional
pain syndrome.  As a result, Wright began to suffer from chronic
leg pain, difficulty sleeping, and anxiety, and he became quick
to anger.  In August 2013, Wright was evaluated for, and was
issued, a certification to enroll in Massachusetts's medical
marijuana program.  Wright subsequently began using medical
marijuana to manage his chronic pain.  Wright's use of medical
marijuana reduces his pain, increases his mobility, improves his
sleep, and reduces his anxiety and anger.  Wright has also been
able to eliminate the use of any opioids as a result of his
medical marijuana use.

In 2014, Wright filed a workers' compensation claim for
permanent and total disability benefits with the department.  On
May 3, 2016, Wright settled his workers' compensation claim

against Unitek's insurer as well as his claim against Pioneer Valley Electric's insurer, Central Mutual Insurance Company (Central Mutual).  Pursuant to the settlement agreements, Wright was provided with lump sums to compensate him for the medical expenses incurred as a result of his injuries.  The settlement agreement with Central Mutual also provided that Central Mutual "agreed to accept ongoing liability for the right knee with the caveat that payment of future medical treatment must be reasonable and necessary and causally related" to Wright's injury."

On October 19, 2016, Wright filed a claim for workers' compensation benefits under G. L. c. 152, §§ 13 and 30, seeking reimbursement for medical expenses incurred from his medical marijuana treatment.  The claim was initially denied on May 10, 2017.  Wright appealed from the denial, and a hearing was held before an administrative judge.  At the time of the hearing, Wright was seeking $24,267.86 in reimbursement for medical marijuana expenses incurred from February 11, 2016, to August 28, 2017.  Wright testified that he spent approximately one hundred dollars every one to two weeks on marijuana vaporizing products.  He further testified that, for the period during which he had purchased edibles, he spent approximately seventy-five dollars per day.

During the hearing, Central Mutual represented to the

administrative judge that it had entered into an agreement with the Workers' Compensation Trust Fund (trust fund) pursuant to G. L. c. 152, § 37,[8] for the trust fund to reimburse Central Mutual for eighty percent of the maximum amount reimbursable by the trust fund for medical expenses. Central Mutual further indicated that, if ordered to reimburse Wright for his medical marijuana expenses, it would in fact seek reimbursement from the trust fund.

The administrative judge found that Wright's testimony as to the positive benefits he receives from medical marijuana was "entirely credible." Nonetheless, the judge concluded that Central Mutual could not be ordered to pay in light of marijuana's illegal status at the Federal level. He also determined that the medical marijuana act precluded him from ordering Central Mutual to reimburse the claimant.

Wright appealed from the decision to the reviewing board of the department. The reviewing board affirmed the administrative judge's denial. It observed that the CSA "clearly and manifestly criminalizes" the activities for which Wright was seeking compensation, and that ordering Central Mutual to pay

---

[8] The Workers' Compensation Trust Fund provides partial reimbursement to second insurers for payments made to employees who have previously suffered a prior injury. See G. L. c. 152, § 37, second par.

would put it at risk of Federal prosecution.  Wright appealed, and we transferred the matter to this court on our own motion.[9]

2.  Discussion.  We examine the reviewing board's decision pursuant to the standards of G. L. c. 30A, § 14 (7).  Under § 14 (7), "[w]e may reverse or modify the board's decision where, among other reasons, it is based on an error of law, or is arbitrary, capricious, or otherwise not in accordance with law."  Spaniol's Case, 466 Mass. 102, 106 (2013).  See G. L. c. 30A, § 14 (7) (c), (g).  The department's interpretation of the workers' compensation statute is entitled to deference.  See Camargo's Case, 479 Mass. 492, 497 (2018).  "However, where the statute is not one that the [department] administers, no deference is due."  Id.  In such instances, we exercise de novo review.  Id.  In the instant case, we conclude that the determinative legal questions involve interpretation of the Commonwealth's medical marijuana law and other Massachusetts and Federal laws not administered by the department.  We therefore exercise de novo review without deference to the reviewing board's legal interpretation.

As outlined supra, prior to the passage of the medical marijuana act, marijuana was illegal under both Massachusetts

---

[9] Another case involving a workers' compensation claim for medical marijuana reimbursement has been stayed in the Appeals Court pending the outcome of this case.  See St. Pierre vs. T.E. Greenwood Construction, Appeals Court docket no. 2018-P-0971.

and Federal law and was not a reasonable medical expense reimbursable pursuant to G. L. c. 152, § 30, under which "an employer is obligated to pay the reasonable and necessary medical expenses resulting from an employee's work-related injury." McElroy's Case, 397 Mass. 743, 750 (1986). See G. L. c. 152, § 13. Federal law has not changed. The only issue is the effect of the medical marijuana act.[10] Thus, to determine whether medical marijuana expenses may be compensable at all, we must look to the provisions of the medical marijuana act. We must also seek to avoid conflict with Federal law and possible preemption under the supremacy clause. See Ajemian v. Yahoo!, Inc., 478 Mass. 169, 184 (2017), cert. denied sub nom. Oath Holdings, Inc. v. Ajemian, 138 S. Ct. 1327 (2018) (absent clear legislative intent to contrary, courts have duty to construe statutes in manner that disfavors preemption). The act itself, we conclude, is drafted with these concerns in mind. It expressly recognizes the Federal legal pitfalls and seeks to steer well clear of them by carving a narrow path through the marijuana regulatory thicket.

   a. Meaning of reimbursement limitation provision. The

---

[10] Although possession of less than one ounce of marijuana was decriminalized by ballot initiative in 2008, it was still illegal at the time of the medical marijuana law's enactment. See Commonwealth v. Cruz, 459 Mass. 459, 473 (2011) ("decriminalization is not synonymous with legalization").

plain language of the reimbursement limitation provision states that nothing in the medical marijuana law "requires any health insurance provider . . . to reimburse any person for the expenses of the medical use of marijuana." St. 2012, c. 369, § 7 (B). To fully understand and interpret this provision, we must also look to the broader context of the over-all medical marijuana scheme and regulatory environment. As explained supra, the stated purpose of the act was to protect patients, caregivers, and medical professionals from prosecution or punishment under Massachusetts law for engaging in the voluntary medical use of marijuana. See St. 2012, c. 369, § 1. The act also recognized that marijuana possession and distribution remain illegal under Federal law and that the Commonwealth has no authority to alter the illegal status of marijuana at the Federal level. St. 2012, c. 369, § 7 (F), (G). See Raich, 545 U.S. at 29. "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." Raich, supra. Providing authorization for medical marijuana use in this environment remains somewhat of a high wire act, and the statute seeks to minimize the possibility of Federal prosecution or Federal preemption by carefully

setting forth the scope of its protections.[11]  It is within this context that the statute expressly states that nothing in the law requires health insurers to reimburse any person for medical marijuana expenses.

As the statute recognizes, requiring companies that insure the health of medical marijuana patients to pay for their marijuana usage raises the stakes much higher.  If insurers were required to make such payments, the size and scope of the legalization of medical marijuana would be substantially expanded, raising concerns about Federal enforcement and preemption.  First, unlike the patients and doctors covered by the act, insurance companies would not be participating in the

---

[11] Indeed, in Bourgoin v. Twin Rivers Paper Co., 2018 ME 77, ¶¶ 29-30, the Supreme Judicial Court of Maine concluded that the CSA preempted Maine's medical marijuana law where a claimant sought reimbursement for medical marijuana expenses.  Other courts that have been skeptical of the preemption argument in the context of compulsory reimbursement of marijuana have relied on the recent changes in Federal enforcement of the CSA.  See Appeal of Panaggio, 172 N.H. 13, 19 & n.2 (2019) (remanding case for further analysis of preemption issue where court had been "left to speculate" about whether insurer would be exposed to criminal prosecution, while noting existence of Obama administration's medical marijuana policy and appropriations amendment); Lewis v. American Gen. Media, 2015-NMCA-090, ¶ 32 (2015) (rejecting preemption argument as speculative in light of Department of Justice guidance and appropriations amendment, which demonstrate "equivocal federal policy").  However, the recent rescission of the Obama administration's medical marijuana guidance demonstrates that enforcement is transitory and subject to change.  Further, as the court in Bourgoin observed, such guidance "was directed only to the question of enforcement of laws but did nothing to challenge their existence" (emphasis in original).  Bourgoin, supra at ¶ 27.

patient's use of a federally proscribed substance voluntarily. It is one thing to voluntarily assume a risk of Federal prosecution; it is another to involuntarily have such a risk imposed upon you. As discussed supra, possession and distribution of marijuana remain federally illegal, as does aiding or abetting such possession or distribution. See 18 U.S.C. § 2(a); 21 U.S.C. § 844(a). It is not unreasonable, given the current hazy regulatory environment and shifting winds of Federal enforcement, for insurance companies to fear that paying for a claimant's marijuana could expose them to potential criminal prosecution. Further, insurance companies are typically involved in interstate commerce, thereby raising Federal regulators' concerns. Requiring interstate insurers to participate in the Massachusetts medical marijuana scheme would extend the reach of the Massachusetts act well beyond the Commonwealth's borders. Reimbursement may also increase usage and the amounts of money at stake, thereby further expanding the scope of the statute, and thus Federal concerns. By providing that the act does not "require" insurers to reimburse medical marijuana expenses, the reimbursement limitation provision protects third parties from being compelled to pay for the use

of a federally proscribed substance.[12]

We have previously considered the question of involuntary involvement under the act in Barbuto. In that case, a medical marijuana patient with Crohn's disease was terminated from her employment after testing positive for marijuana use. Barbuto, 477 Mass. at 458. In our decision, we indicated that, in seeking to use marijuana to address an illness specifically delineated by the statute, she was simply exercising her rights under the act. See St. 2012, c. 369, § 2 (C) (definition of "debilitating medical condition" under medical marijuana act explicitly includes Crohn's disease). See also St. 2012, c. 369, § 4 (act declares that patients shall not be denied "any right or privilege" on basis of their medical marijuana use).

The medical marijuana patient in Barbuto commenced an action for handicap discrimination, in violation of G. L. c. 151B, § 4 (16), along with a number of other related claims. Barbuto, 477 Mass. at 458-459. She was not seeking third-party reimbursement. Rather, her complaint asserted that she was a "handicapped person" within the scope of the Commonwealth's handicap discrimination law, and that her medical marijuana use

---

[12] Additionally, by prohibiting reimbursement, the act forecloses the possibility of disputed claims leading to defensive litigation. Such litigation would only increase the likelihood of the entire statute being challenged on preemption grounds.

at home was a reasonable accommodation required by her employer. See id. at 461. The defendants waived the argument that Federal preemption barred the plaintiff's claims, thereby limiting our discussion of the issue in that case. See id. at 466 n.9.

A provision of the act that was at issue in Barbuto expressly stated that the act did not "require[] any accommodation of any on-site medical use of marijuana in any place of employment." St. 2012, c. 369, § 7 (D). We concluded that by specifying that the act did not require "on-site" accommodation of medical marijuana use, this limitation "implicitly recognizes that the off-site medical use of marijuana might be a permissible 'accommodation.'" Barbuto, 477 Mass. at 464-465. We emphasized that "accommodation" was a term of art under the handicapped discrimination laws, and the statute's drafting appeared to recognize the issue and the distinction between on-site and off-site accommodation. Id. Here, by contrast, the reimbursement limitation language does not make any sort of similar implicit recognition. Rather, the language broadly states that nothing in the act requires reimbursement to "any person for the expenses of the medical use of marijuana." St. 2012, c. 369, § 7 (B).

The more expansive limitation language in the reimbursement subsection comports with the different legal stakes at issue here. As we recognized in Barbuto, "[t]he only person at risk

of Federal criminal prosecution for [the plaintiff's] possession of medical marijuana is the employee." Barbuto, 477 Mass. at 465. On the other hand, while an employer's passive acceptance of off-site use of medical marijuana does not have potential criminal implications under Federal law, an insurer's compelled reimbursement of medical marijuana affirmatively entangles the insurer in the Commonwealth's medical marijuana scheme.

We also recognized in Barbuto that there are specific cases where an employer may not reasonably be able to accommodate an employee's medical marijuana usage without violating Federal statutes or regulations. See Barbuto, 477 Mass. at 467. In such limited instances, the employer may be able to show that such accommodation would constitute an undue hardship. See id. ("an undue hardship might be shown if the employer can prove that the use of marijuana by an employee would violate an employer's contractual or statutory obligation, and thereby jeopardize its ability to perform its business"). We indicated that examples of such undue hardship may include transportation employers and Federal government contractors who are subject to certain Federal statutory and regulatory requirements restricting their ability to hire or maintain employees who use marijuana. Id. at 467-468. By contrast, concerns about possible legal exposure for insurance companies are likely to be present in every case, for the reasons discussed supra. We thus

find Barbuto readily distinguishable.

We also observed in Barbuto that declaring "an accommodation for medical marijuana to be per se unreasonable out of respect for Federal law would not be respectful of the recognition of Massachusetts voters, shared by the legislatures or voters in the vast majority of States, that marijuana has an accepted medical use for some patients suffering from debilitating medical conditions." Id. at 465-466. Here, however, our holding is entirely consistent with the will of Massachusetts voters. The citizens of Massachusetts voted to approve a medical marijuana act that was designed to protect medical marijuana participants and avoid the risk of Federal intervention. Our conclusion that insurers, who did not choose to participate, may not be compelled to reimburse medical marijuana expenses is entirely in accord with these purposes as well as the act's plain language.

Our understanding of the reimbursement limitation provision is also consonant with the fact that most States have approached this issue in a similar manner. As discussed, many States with medical marijuana schemes include language in their medical marijuana statutes protecting third-party insurers from being required to provide reimbursement to medical marijuana patients. See note 6, supra. See also 8 L.K. Larson, Larson's Workers' Compensation Law § 94.06 (rev. ed. 2019) ("Acknowledging the

inconsistency between state and federal law, a number of states have adopted statutory provisions making it clear that an insurer or self-insurer may not be compelled to reimburse a patient for costs associated with the use of medical marijuana").  By excluding third-party insurers from being obligated to reimburse medical marijuana patients under the statute and limiting the protections of the act to those willing to assume the risk of exposure to Federal prosecution, these statutory provisions lessen the likelihood of Federal intervention and preemption.

Finally, we reject any interpretation contending that the general language of the workers' compensation statute requiring reimbursement for reasonable and necessary medical expenses requires third-party reimbursement because medical marijuana use is legalized under the medical marijuana act.  Such an interpretation ignores the fact that marijuana was previously illegal under Massachusetts law, that it remains illegal under Federal law, and that the medical marijuana act itself expressly states that it does not require such reimbursement.  The medical marijuana act cannot state on its face that "[n]othing in this law requires [third-party reimbursement]" but then be interpreted to require reimbursement under other laws on the basis of the act's legalization of medical marijuana.  St. 2012, c. 369, § 7 (B).  If this were the case, then the express

language in the medical marijuana act would disguise the provision's actual meaning, parading as its opposite. Ballot questions in particular must be readily understandable to voters, who are presumed to understand the plain meaning of an initiative when they vote to approve it.[13] See Commonwealth v. Cruz, 459 Mass. 459, 470-471 (2011).

In sum, based on the plain language of the reimbursement limitation provision contained within St. 2012, c. 369, § 7, as well as the context within which it was enacted, we conclude that health insurance providers may not be compelled to reimburse claimants for expenses for the medical use of

---

[13] Moreover, the summary of the medical marijuana initiative petition prepared by the Attorney General and disseminated to voters explicitly stated that the "proposed law would . . . not require any health insurer or government entity to reimburse for the costs of the medical use of marijuana." See Information for Voters:  2012 Ballot Questions, Question 3:  Law Proposed by Initiative Petition, Medical Use of Marijuana.  As summaries of initiative petitions are to be "written in plain English that a reasonable voter can readily comprehend," we will not assume that the summary was intended to relay to voters that insurers were, in fact, required to provide such reimbursements, contrary to the summary's plain language.  Hensley v. Attorney Gen., 474 Mass. 651, 664 (2016).  See Barbuto v. Advantage Sales & Mktg., LLC, 477 Mass. 456, 469 & n.11 (2017) ("the closest equivalent to legislative history [for laws enacted through an initiative petition] . . . is the Information for Voters guide," which includes Attorney General's summary).

marijuana.[14,15]

b. Scope of reimbursement limitation provision. The claimant separately argues that, regardless of how we interpret the reimbursement limitation provision, it does not implicate workers' compensation insurers. By its terms, the provision applies to "any health insurance provider, or any government agency or authority." St. 2012, c. 369, § 7 (B). The claimant contends that a workers' compensation insurer may not be considered a "health insurance provider" under the statute. We conclude that the statute applies to those providing insurance for medical marijuana payments, including workers' compensation insurers. We also conclude that the trust fund involved in the

---

[14] Because we conclude that the Massachusetts medical marijuana act explicitly alleviates insurers from the burden of reimbursing for medical marijuana expenses, we do not need to reach Central Mutual's alternative argument that the Massachusetts medical marijuana scheme is preempted by Federal law. Accordingly, we need not consider whether an insurer's reimbursement of medical marijuana expenses would, in fact, constitute a violation of the CSA. Nonetheless, the fear of criminal exposure was clearly a motivating factor in the drafting of the reimbursement limitation language found in the act.

[15] We also observe that marijuana remains a controlled substance in Massachusetts. See G. L. c. 94C, § 31 (listing "marihuana" as class D substance). Although recreational marijuana possession and use was legalized in 2016, the Commonwealth places limits on possession and regulates its commercial sale. See G. L. c. 94G, § 7 (a) (1), (2). See also Commonwealth v. Long, 482 Mass. 804, 811 (2019). Possession and distribution outside of these limits may still subject an individual to penalties under Massachusetts law. See G. L. c. 94C, § 34.

instant case fits within the definition of a government agency or authority.

Workers' compensation constitutes a "system of insurance" intended to "replace in part the wages lost by workers or their dependents as a result of injuries suffered in connection with their work." Letteney's Case, 429 Mass. 280, 282 (1999). Pursuant to this statutory scheme, "[e]mployees give up their right to sue their employers in tort in return for a right to compensation for job-related injuries, whether or not the employer was at fault." Id. at 284. We have frequently made reference to the fact that workers' compensation is a form of insurance. See, e.g., Benoit v. Boston, 477 Mass. 117, 125-126 (2017) ("Such payments are in the nature of insurance benefits received pursuant to a policy taken out by the employer for the employee's benefit"); Letteney's Case, supra. Further, a significant aspect of the workers' compensation insurance scheme, and the one precisely at issue here, is the provision of medical expenses and associated health care payments. See Neff v. Commissioner of the Dep't of Indus. Accs., 421 Mass. 70, 75 (1995). Thus, entities who provide workers' compensation insurance are plainly providing health insurance benefits.

This conclusion also comports with the design of the act to avoid the risk of Federal intervention. Whether a medical marijuana patient seeks reimbursement under the workers'

compensation statute for injuries suffered in the course of his or her employment, or seeks reimbursement from his or her private health insurance provider, the underlying conduct at issue is the same:  a medical marijuana patient is requesting that the entity provide payments for the patient's purchase of marijuana.  In either case, requiring the insurer to reimburse these expenses would compel the insurer's involvement in the medical marijuana market.  Given that the act was drafted to avoid Federal prosecution and that, in accordance with this purpose, the reimbursement limitation provision shields third parties from potential Federal criminal exposure, it would make little sense to protect insurance companies in one scenario and not the other.

This conclusion is also in keeping with the general purpose of workers' compensation insurance.  Workers' compensation was designed to eliminate "piecemeal tort litigation and tort claims by individual workers, which are time-consuming, expensive, and afford no guarantee of compensation."  Estate of Moulton v. Puopolo, 467 Mass. 478, 483 (2014).  It serves to protect workers, ensuring prompt administration of benefits while also allowing employers to "gain predictability and cost containment."  Id.  However, requiring workers' compensation insurers to reimburse medical marijuana expenses would threaten to undermine the protection, predictability, and timeliness

contemplated by the workers' compensation scheme.  Insurers who fear criminal exposure under existing Federal law would not voluntarily agree to reimburse a claimant for medical marijuana expenses in the first instance, as the insurer in this case vigorously argued.  The resulting delays in settlement and potential litigation in every single case where a claimant seeks benefits that include reimbursement for medical marijuana would be entirely contrary to the underlying purpose of the workers' compensation scheme.  The reimbursement limitation provision ensures that the medical marijuana act does not result in such widespread litigation and maintains the stability of the workers' compensation scheme.

Finally, we also recognize that workers' compensation insurers may seek reimbursement from the trust fund for up to seventy-five percent of payments made to employees who have been previously injured.  See G. L. c. 152, § 37, second par. Indeed, in the instant case Central Mutual has represented that it intends to seek reimbursement from the trust fund if ordered to pay for Wright's medical marijuana expenses.  The trust fund is administered by the Massachusetts treasury.  See G. L. c. 152, § 65.  Thus, as a government entity, the trust fund is directly implicated by the language of the reimbursement limitation provision, which includes within its scope "any government agency or authority."  See St. 2012, c. 369, § 7 (B).

Such reimbursement of medical marijuana expenses violates the express language of the statute.

In sum, neither Central Mutual nor the trust fund can be ordered to reimburse Wright for his medical marijuana expenses, as the medical marijuana act does not provide for such third-party reimbursements.

3. Conclusion. We conclude that the reimbursement limitation provision contained within St. 2012, c. 369, § 7, prevents a health insurance provider or government agency from being ordered to reimburse a claimant for medical marijuana expenses. Accordingly, the claimant's medical marijuana expenses are not compensable. The decision of the reviewing board is affirmed.

So ordered.